561 So.2d 1164 (1989)
Arthur BREAKSTONE and Beach Enterprises, Ltd., a Florida Limited Corporation, Petitioner,
v.
Honorable Mary Ann MacKENZIE, As Judge of the Eleventh Judicial Circuit Court, in and for Dade County, Florida, Respondent.
SUPER KIDS BARGAIN STORE, INC., Petitioner,
v.
Honorable Mary Ann MacKENZIE, As Judge of the Eleventh Judicial Circuit Court, in and for Dade County, Florida, Respondent.
Nos. 88-2392, 88-2903.
District Court of Appeal of Florida, Third District.
September 14, 1989.
*1165 William J. Berger, Miami, for petitioners Breakstone and Beach Enterprises, Ltd.
Shapiro and Weil and Murray Weil, Miami Beach, for petitioner Super Kids Bargain Store, Inc.
Robert A. Ginsburg, County Atty., and Roy Wood, Asst. County Atty., for respondent.
Richard C. Milstein, Coral Gables, Tew Jorden Schulte & Beasley and Gregory P. Borgognoni and Osmer D. Batcheller, Miami, for Dade County Bar Ass'n as amicus curiae.
Rutledge R. Liles, Jacksonville, Stephen N. Zack, Miami, John F. Harkness, Jr., Paul F. Hill, Tallahassee, for the Florida Bar as amicus curiae.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, FERGUSON, JORGENSON, COPE and LEVY, JJ.

ON HEARING AND REHEARING EN BANC
COPE, Judge.
We granted en banc consideration of two petitions for writ of prohibition which present an issue of exceptional importance relating to the disqualification of judges. *1166 See Fla.R.App.P. 9.331(a). The question common to the two petitions is whether disqualification was required where an attorney appearing before the trial judge had made a $500 contribution to the election campaign of the trial judge's husband. We hold that the motions for disqualification should have been granted. A $500 contribution by opposing counsel would, we conclude, cause a reasonable person to fear a bias by the trial judge in favor of the opposing side. We certify to the Florida Supreme Court that the question determined here is one of great public importance, so as to permit further review under article V, section 3(b)(4) of the Florida Constitution.[1]

I.
The two cases under review were consolidated solely for purposes of en banc consideration. They are otherwise unrelated civil actions pending in the trial court.
The first of the motions to disqualify was filed by Breakstone, a defendant in a post-judgment garnishment proceeding. At the time the motion for disqualification was filed, the trial judge's husband was a candidate in a contested election for the office of circuit judge. Counsel for plaintiff below had contributed $500 to the husband's campaign. Petitioner Breakstone moved to disqualify the trial judge, asserting by affidavit that plaintiff's counsel was one of approximately fifteen attorneys who had contributed to the husband's campaign; that the $500 contribution was the second largest amount contributed; and that by reason of the substantial contribution Breakstone feared that he would not receive a fair and impartial trial.[2]
The trial judge denied the motion as legally insufficient and stated in part:
I cannot address your motion as far as the truth or misinformation that you may have or not have or anything like that.
But I will state for the record that I kept absolutely clear of my husband's campaign, had nothing to do with it whatsoever. Couldn't go to a judicial luncheon  I went to one and it was followed all over by The Miami Herald, and that's the last time I went to anything. And who donated to his campaign and who did not donate to his campaign, I don't know. I have not looked at his records. So in no way could I be prejudiced.
Later in the hearing, the trial judge commented about her "frustration for not being in my husband's campaign... . In fact, if I had been in it, he would have won, and that's for real."[3] A renewed motion for disqualification was made on the ground that the trial judge had impermissibly commented on the merits of the disqualification motion. The renewed motion to disqualify was likewise denied.
On petition for writ of prohibition, a panel of our court held that the trial judge should have disqualified herself. Breakstone v. MacKenzie, 561 So.2d 1163 (Fla. 3d DCA 1988). The panel concluded that the substantial financial contribution by plaintiff's counsel constituted legally sufficient grounds for disqualification.
In the second of the two consolidated cases, the same $500 contributor represented *1167 the plaintiff. The defendant, Super Kids Bargain Store, Inc., moved to disqualify the trial judge on the basis of the same $500 contribution, and this court's panel opinion in Breakstone. At the hearing on the motion to disqualify, plaintiff's counsel announced he would withdraw from the case and made an ore tenus motion for substitution of counsel. The trial judge opined that the motion for disqualification was legally sufficient. She then granted the ore tenus motion for substitution and denied the motion for disqualification. Super Kids' petition for writ of prohibition was consolidated with Breakstone for purposes of en banc consideration.

II.
While the procedure for disqualification of judges in civil cases is governed by Rule 1.432, Florida Rules of Civil Procedure, the substantive standards for disqualification are found in the Code of Judicial Conduct and in section 38.10, Florida Statutes (1987). The Code of Judicial Conduct provides, in part, "that `[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned... .'" Livingston v. State, 441 So.2d 1083, 1086 (Fla. 1983) (quoting Canon 3 C(1), Fla.Bar Code Jud.Conduct). The disqualification statute provides:
Whenever a party ... files an affidavit stating that he fears he will not receive a fair trial ... on account of the prejudice of the judge ... against the applicant or in favor of the adverse party, the judge shall proceed no further, but another judge shall be designated... .
§ 38.10, Fla. Stat. (1987). It is settled that "the prejudice of the judge ... against the applicant or in favor of the adverse party," id., includes prejudice against counsel for the applicant, or in favor of counsel for the adverse party. Livingston v. State, 441 So.2d at 1087.
The standards for disqualification "were established to ensure public confidence in the integrity of the judicial system... ." Id. at 1086. The Florida Supreme Court has said:
"Prejudice of a judge is a delicate question to raise but when raised as a bar to the trial of a cause, if predicated on grounds with a modicum of reason, the judge against whom raised should be prompt to recuse himself. No judge under any circumstances is warranted in sitting in the trial of a cause whose neutrality is shadowed or even questioned.

... .
... It is a matter of no concern what judge presides in a particular cause, but it is a matter of grave concern that justice be administered with dispatch, without fear or favor or the suspicion of such attributes. The outstanding big factor in every lawsuit is the truth of the controversy. Judges, counsel, and rules of procedure are secondary factors designed by the law as instrumentalities to work out and arrive at the truth of the controversy.
The judiciary cannot be too circumspect, neither should it be reluctant to retire from a cause under circumstances that would shake the confidence of litigants in a fair and impartial adjudication of the issues raised."
Id. at 1085-86 (quoting Dickenson v. Parks, 104 Fla. 577, 582-84, 140 So. 459, 462 (1932) (emphasis added)).
Leaving aside issues of form and timeliness, the principal issue presented in a motion for disqualification is that of legal sufficiency. See id. at 1086. The trial judge cannot pass upon the truth or falsity of the facts contained in the affidavit, nor adjudicate whether in reality prejudice exists. The facts set forth in the affidavit are taken as true, and if legally sufficient, the trial judge must withdraw.
Legal sufficiency is governed by a reasonable person standard. The affidavit must recite "facts and circumstances that would lead any normal human being in the position of [the movant] to `fear' that he would not receive a fair trial... ." Dickenson v. Parks, 104 Fla. at 582, 140 So. at 462; accord Fischer v. Knuck, 497 So.2d at 242; Livingston v. State, 441 So.2d at 1087. "`If the attested facts supporting *1168 the suggestion are reasonably sufficient to create such a fear, it is not for the trial judge to say that it is not there.'" Livingston v. State, 441 So.2d at 1087 (quoting State ex rel. Davis v. Parks, 141 Fla. 516, 518, 194 So. 613, 614 (1939)). So long as the allegations "`are not frivolous or fanciful, they are sufficient to support a motion to disqualify... .'" Hayslip v. Douglas, 400 So.2d 553, 556 (Fla. 4th DCA 1981) (quoting State ex rel. Brown v. Dewell, 131 Fla. 566, 573, 179 So. 695, 697-98 (1938)).
The standards set forth can, of course, be a matter of frustration for a trial judge. Although the trial judge may strongly disagree with the factual matters set forth in the affidavit, the trial judge must accept the affidavit as true and consider solely the issue of legal sufficiency. Fla.R.Civ.P. 1.432; § 38.10, Fla. Stat. (1987). For that reason an order of disqualification should not be interpreted as a determination of the actual existence of prejudice, for in any such proceeding the matter asserted in the affidavits is assumed to be true, although not proven. The disqualification procedure is designed to assure the appearance and reality of impartial adjudication while avoiding the undesirable situation which could be presented by inquiry into the existence of an actual prejudice on the part of the trial judge.[4]
In the present case the grounds set forth by movants are legally sufficient for disqualification. The movants swore that they had a fear of prejudice on account of opposing counsel's $500 contribution to the election campaign of the judge's spouse. The relevant benchmark, while imprecise, is determined on a case by case basis. A $500 contribution is a substantial one by any standard. Certainly the ordinary litigant does not make, or have the financial capacity to make, a $500 contribution. Where the opposing litigant or opposing counsel has made such a contribution, a reasonable person in the position of movants would fear that he would not receive a fair trial. The concern, from the standpoint of a reasonable person, is neither frivolous nor fanciful.
The amount and nature of campaign contributions has been a matter of public concern in this state dating from at least the time of adoption of Florida's "Who Gave It  Who Got It" campaign contribution law in 1951.[5] Writing in the context of campaign contributions to judicial elections, the Florida Supreme Court has articulated two reasons for legitimate concern about campaign contributions: "`1. The tendency or possibility to create a quid pro quo relationship, and 2. the creation of an appearance of influence [or] corruption.'" Richman v. Shevin, 354 So.2d 1200, 1203 (Fla. 1977) (citation omitted), cert. denied, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978). Indeed, "`the prevention of corruption and the appearance of corruption spawned by the real or imagined coercive influence of large financial contributions on candidates' positions and on their actions if elected to office'" id. at 1205 (citation omitted), constitutes a compelling state interest which permits abridgement of fundamental first amendment associational rights by the imposition of aggregate contribution limits. Id. at 1204-05; cf. Buckley v. Valeo, 424 U.S. 1, 22, 96 S.Ct. 612, 636, 46 L.Ed.2d 659, 689 (1976) ("Making a contribution ... serves to affiliate a person with a candidate").[6]
*1169 The concern voiced by the movants' affidavits is directed, of course, to a contribution made to the campaign of the trial judge's spouse, and not that of the trial judge herself. The reasonableness of movants' concern is not diminished by that fact. See Roudner v. MacKenzie, 536 So.2d 299 (Fla. 3d DCA 1988) (disqualification required for reasons related to spouse's political campaign). The trial judge's own comments in this case substantiate that the political campaign of one's own spouse naturally calls forth feelings of interest, loyalty, and concern. A reasonable person would assume that a judge is likely to be aware of the affairs of a member of his or her immediate household. Indeed, Canon 5 C(5) of the Code of Judicial Conduct requires that a judge "make a reasonable effort to inform himself about the personal financial interests of members of his family residing in his household," and requires the reporting of "any gift, bequest, favor, or loan received thereby of which he has knowledge and which tends to reflect adversely on his impartiality... ." The Canons thus acknowledge the commonsense proposition that material financial transactions of members of a judge's household can impair, or appear to impair, the judge's impartiality.[7] The movants' affidavits are "`reasonably sufficient' to create a `wellfounded fear' in the mind of a party that he or she will not receive a fair trial." Fischer v. Knuck, 497 So.2d at 242 (citations omitted).
The respondent trial judge argues, however, that the result we reach here contravenes existing Florida law. She urges that political support of a trial judge is never sufficient to compel disqualification under Florida law. We disagree.
Among the decisions respondent cites is Ervin v. Collins, 85 So.2d 833 (Fla. 1956). In that case, a motion was made to disqualify three justices of the Florida Supreme Court. One of the justices was said to be disqualified because the justice and then Governor LeRoy Collins were "close, intimate, and personal friends." The disqualification of the other two justices was sought on the ground that each was appointed by Governor Collins, "and each is a strong personal and political friend of the Governor." Id. at 833. The movant conceded that the suggestions for disqualification were "not legally sufficient to constitute a basis for the disqualification of the Justices ... but on the contrary are addressed to the conscience of the respective Justices[,]" id. at 834, with which the Court agreed. Ervin does not deal with the issue of campaign contributions, and the opinion is generally cited for the proposition that friendship, without more, is not a basis for disqualification. See In Re Estate of Carlton, 378 So.2d 1212, 1217-20 (Fla. 1979) (Overton, J., on denial of request for recusal), cert. denied, sub nom Hayes v. Rogers, 447 U.S. 922, 100 S.Ct. 3013, 65 L.Ed.2d 1114 (1980). We do not read Ervin as having created an exception to the disqualification principles announced by the *1170 Florida Supreme Court in such decisions as Livingston, Fischer, and Dickenson. Cf. State ex rel. La Russa v. Himes, 144 Fla. 145, 147-48, 197 So. 762, 763 (1940) (campaign statements by elected trial judge can constitute grounds for post-election disqualification).
Much closer in spirit to the position advanced by the trial judge is the second district's decision in Raybon v. Burnette, 135 So.2d 228 (Fla. 2d DCA 1961). In that case the law partner of plaintiff's counsel had run unsuccessfully against the sitting trial judge. Both the plaintiff and plaintiff's counsel had supported the losing candidate, while defense counsel had supported, and financially contributed to, the successful campaign of the sitting judge. These facts were held insufficient to constitute grounds for disqualification. It is evident the second district perceived the facts of the case to fall within the rubric of "personal and political friendship," for the court concluded that denial of the motion was mandated by the Florida Supreme Court's decision in Ervin v. Collins.
Raybon deals with campaign contributions only in passing, and sheds no light on the problem before us.[8] If Raybon is read as holding that campaign support and contributions can never give rise to circumstances which call for disqualification, then we disagree, as did the fourth district in Caleffe v. Vitale, 488 So.2d 627, 629 (Fla. 4th DCA 1986) ("[P]erceptions of professional legal ethics in the conflict of interest realm have undergone much evolution since 1961, and we have some doubt as to whether Raybon would be decided the same way today.").[9] We do, of course, agree with Raybon's observation that members of the bar should play an active part in judicial elections. 135 So.2d at 230. The responsibility to play an active part does not, however, translate into an immunity from disqualification when the facts presented otherwise warrant it.
Respondent likewise relies on McDermott v. Grossman, 429 So.2d 393 (Fla. 3d DCA 1983), and Marexcelso Compania Naviera, S.A. v. Florida National Bank, 533 So.2d 805 (Fla. 4th DCA 1988), both of which are inapplicable here. In McDermott, 429 So.2d at 393-94, an attorney opposed the election of a judge, who delivered a "tirade" against the attorney for having done so. We held that disqualification was required. In Marexcelso a trial judge's campaign committee solicited defense counsel for an endorsement and contribution, but did not solicit plaintiff's counsel. Those facts were held not to constitute good grounds for disqualification. 533 So.2d at 807.[10]
Respondent next suggests that this court follow the approach recommended by one *1171 commentator and establish an arbitrary contribution level to be used in disqualification proceedings of this type. Above the benchmark level, the trial judge would be subject to disqualification; below the benchmark, the judge would not. See Note, 40 Stan.L.Rev. at 482. Respondent suggests, as did the commentator, that the benchmark be $1,000. Since Florida law establishes a maximum limit of $1,000 per election for trial judges, § 106.08(1)(e), Fla. Stat. (1987), respondent suggests that disqualification would never be required for a legal contribution to a judge's own campaign. It therefore follows, according to respondent, that no disqualification is required where, as here, the contribution is made to the spouse's campaign.
Amicus curiae Dade County Bar Association joins in respondent's suggestion, but for somewhat different reasons. Amicus urges that the $1,000 limit represents a legislative determination of reasonableness. The implication is that if the legislature has allowed contributions up to the $1,000 level, then the legislature has presumptively concluded that no bias or prejudice could result from such a contribution. We reject that view.
The approach taken by respondent and amicus misconceives the structure and function of the campaign contribution laws. Under our election laws, all contributions must be disclosed, without exception. The purpose of the disclosure requirement is to allow the electorate to know who made what contributions in what amounts, precisely so that they may draw their own conclusions, including conclusions about any potential or actual conflicts of interest. Note, Florida's Campaign Finance Law: A Restoration of the Public's Confidence?, 28 U.Fla.L.Rev. 458, 464 (1976); see Ferre v. State ex rel. Reno, 478 So.2d 1077, 1080 (Fla. 3d DCA 1985), aff'd, 494 So.2d 214 (Fla. 1986), cert. denied, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987). Far from supporting respondent's position, disclosure laws indicate a legislative recognition that a contribution within legal limits can create a "real or imagined coercive influence." Richman v. Shevin, 354 So.2d at 1205. It is one thing to assign aggregate contribution limits for election campaigns; it is another to make a determination of impartiality for the adjudication of a specific case involving a large contributor.[11] Since the decisional law requires that motions for disqualification be considered on a case-by-case basis, we decline the invitation to establish a "benchmark" figure to be used in disqualification proceedings. Instead, we only conclude that the $500 contribution at issue here is of sufficient magnitude to create a reasonable fear of prejudice, and express no opinion as to the appropriate disposition of any motion involving lesser contribution amounts.[12]
Respondent also contends that it would be unwise to order disqualification based on the facts of the present case. She urges that adherence to the position of the panel *1172 will create a chilling effect on the ability of judicial candidates to raise funds for contested elections. Respondent, joined by amici curiae, reasons that a disqualification in this case (involving a contribution to a spouse) would necessitate a disqualification where a trial judge receives an equivalent contribution to his or her own election campaign. It follows, they argue, that practicing attorneys will cease to make contributions of $500 to judicial campaigns, and indeed, may refuse to contribute altogether.
The inquiry here is not one of policy, but rather the fundamental right to a fair trial in a fair tribunal. Under the statute, the Code of Judicial Conduct, and the decisional law, the sole issue before us is whether the litigant has articulated a well-founded, nonfrivolous fear that he will not receive a fair trial. Where, as here, the movant has made the necessary showing (in this case predicated on the $500 contribution), he is entitled to relief. We are not at liberty to ignore an otherwise well-founded fear, based upon possible collateral consequences of our ruling. The overriding priority, reflected in the substantive law, is to assure that our courts are impartial, and that they have the appearance of impartiality. On that the credibility of the judiciary depends.
We would also suggest that the just mentioned contention of respondent and amici seriously underestimates the strength of character of Florida attorneys, and misconceives the crucial role that the disqualification process plays in upholding the integrity and impartiality of the judicial system. In a system of judicial elections, attorney contributions are given for many reasons. See generally Note, 40 Stan.L. Rev. at 480-81. Among those are, presumably, the belief that the supported candidate is the best-qualified person in the race; recognition of the historic obligation of the Bar to support well-qualified candidates; and personal ties emanating from friendship, family relationships and past personal or professional affiliation. To suggest that a candidate's friends and supporters will fail to assist at a substantial level through fear of possible disqualification of the judge on motion in future cases (thus running the risk that the opposition will instead be elected), defies both logic and experience. Far from heralding the demise of the election system, an even-handed application of the disqualification rule is the only way that such a system can maintain its credibility.

III.
We turn briefly to secondary issues presented by the pending cases. In Breakstone, the petitioner filed a second motion for disqualification, arguing that in the course of denying the first motion for disqualification, the trial judge had impermissibly passed on the truth of the facts alleged, thus providing additional grounds for disqualification. We agree. See Fla.R. Civ.P. 1.432(d); Bundy v. Rudd, 366 So.2d 440, 442 (Fla. 1978); Stimpson Computing Scale Co. v. Knuck, 508 So.2d 482, 484 (Fla. 3d DCA 1987); State ex rel. Allen v. Testa, 414 So.2d 38, 39 (Fla.3d DCA 1982); Management Corp. of America v. Grossman, 396 So.2d 1169 (Fla. 3d DCA 1981). The second motion for disqualification, like the first, should have been granted.
In the companion case, petitioner Super Kids called up its motion for disqualification for hearing in the trial court. The trial judge conceded, in light of the panel opinion in Breakstone, that the motion was legally sufficient. Nonetheless, she first entertained a motion for substitution of counsel, as a result of which counsel who had made the campaign contribution withdrew. The trial judge then denied the motion for disqualification.
It is well settled that "[a] judge faced with a motion for recusal should first resolve that motion before making additional rulings in a case... . [A] recusal motion must be heard first." Stimpson Computing Scale Co. v. Knuck, 508 So.2d at 484. Not only is the procedure well established, but the approach taken here creates, rather than dissipates, a perception that the trial judge attempted to retain the case as an accommodation to withdrawing counsel. See Livingston v. State, 441 So.2d at 1085-86 *1173 ("`It is a matter of no concern what judge presides in a particular cause, but it is a matter of grave concern that justice be administered with dispatch, without fear or favor or the suspicion of such attributes'") (citation omitted). Super Kids' motion for disqualification should have been the first matter to be considered, and as it was legally sufficient, the motion should have been granted.
In response to a concern raised by amicus, we note that the issue presented by this case is whether disqualification was required when presented by motion of a party. We do not say that the trial judge must disqualify herself sua sponte in the circumstances present here. If, as not uncommonly happens, litigants elect not to pursue an available ground for disqualification, the trial judge is entitled to proceed. Of course, even when no motion is made, voluntary recusal is permissible where the trial judge feels that he or she should not sit.[13]E.g., Ball v. Yates, 158 Fla. 521, 532-33, 29 So.2d 729, 735, cert. denied, 332 U.S. 774, 68 S.Ct. 66, 92 L.Ed. 359 (1947); In Re Estate of Carlton, 378 So.2d at 1220 (opinion of Overton, J.); Department of Revenue v. Golder, 322 So.2d 1, 6-7 (Fla. 1975) (opinion of England, J.); Pistorino v. Ferguson, 386 So.2d 65, 67 (Fla. 3d DCA 1980). Amici curiae also say that the result we reach here would mandate vicarious disqualification of law firms where a single member of the firm made a campaign contribution. No such issue is presented here.

IV.
We conclude that on this record the motions for disqualification should have been granted. In so ruling we confine ourselves to the facts presented, and do not reach any issue involving lesser contribution amounts, vicarious disqualification, or contributions which are remote in time.
We grant the petitions for writ of prohibition but, as we are confident that the trial judge will enter an order of recusal in accordance with the views expressed herein, we withhold formal issuance of the writs.
We certify to the Florida Supreme Court the following question of great public importance:
IS A TRIAL JUDGE REQUIRED TO DISQUALIFY HERSELF ON MOTION WHERE COUNSEL FOR A LITIGANT HAS GIVEN A $500 CAMPAIGN CONTRIBUTION TO THE POLITICAL CAMPAIGN OF THE TRIAL JUDGE'S SPOUSE?
HUBBART, BASKIN, FERGUSON and JORGENSON, JJ., concur.
FERGUSON, Judge (concurring).
After weighing both points of view on the delicate issue presented, I join in Judge Cope's thoroughly-researched and well-reasoned opinion because it properly elevates reality above theoretical nicety. The presumption of regularity and propriety, which is the foundation of our legal system, was adequately rebutted by allegations in the disqualification motions. In the real world the facts of these cases, to include the events described in footnote 2, would give an appearance of partiality  justifying a recusal  notwithstanding the judge's genuine ability to maintain neutrality.
In my view the majority opinion does not create a standard for mandatory self-recusal. At issue is whether the allegations in the motions for disqualification, viewed objectively, were reasonably sufficient to create a fear that the movants would not receive a fair trial. A judge faced with a motion for recusal, on grounds that the facts are such that her impartiality might reasonably be questioned, ought to consider "how [her] participation in a given case looks to the average person on the street." Potashnick v. Port City Constr. Co., 609 F.2d 1101, 1111 (5th Cir.), cert. denied, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). *1174 By that standard the disqualification motions should have been granted.
It was not the intent of the majority to sabotage the existing system of electing judges. Neither is it conceded that the majority opinion will have that effect or will necessitate reaching the broader political issue which has alarmed the dissenters  whether the present system of choosing trial judges should be jettisoned in favor of a system of merit retention and selection. In all likelihood today's decision will no more trouble the present system than a teardrop in Biscayne Bay. In fact, and contrary to what is suggested by the Chief Judge in his concurrence to the dissenting opinion, the majority view is a workable effort to make the constitutional system work within the higher framework of fundamental fairness  consistent with the presumed intent of the framers.
BASKIN and JORGENSON, JJ., concur.
NESBITT, Judge (dissenting).
I respectfully dissent. The en banc court has determined that an attorney's political campaign contribution to a judicial candidate and his subsequent appearance before the candidate, or the candidate's spouse, is presumptively grounds for judicial disqualification. I conclude just the opposite, i.e., that a contribution of $1,000 or less made by a litigant or his counsel to the political campaign of a trial judge or the judge's spouse does not create a legally sufficient basis for a reasonable person to fear a bias by the trial judge in favor of the contributing side. Therefore, a motion for disqualification based solely upon such facts may be denied.
The citizens of Florida have chosen to elect their trial judges. Like any election campaign, a judicial campaign requires funds. The Florida legislature has acted to balance the first amendment right to freedom of political association with the need for fair, open, and aboveboard elections. Thus, we have the campaign finance limitation law, section 106.08, Florida Statutes (1987), and the contribution disclosure law, section 106.11, Florida Statutes (1987).
The en banc court finds the purpose of the $1,000 campaign finance limitation and the contribution disclosure law to be merely to alert the electorate as to who made what contribution in what amount, so that citizens can thereafter "draw their own conclusions" as to potential or actual conflicts of interest. Were that the case, then the campaign contribution recording law, standing alone, and not the contribution limitation law, would achieve this end.
Because we are involved with the curtailment of a constitutional right, the first amendment freedom of political association, any action limiting this right must be narrowly tailored to meet the state interest while avoiding unnecessary abridgment of associational freedoms. Cousins v. Wigoda, 419 U.S. 477, 488, 95 S.Ct. 541, 548, 42 L.Ed.2d 595, 605 (1975); NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405, 423 (1963); Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231, 238 (1960). Following this analysis to its logical conclusion, the $1,000 contribution limitation must do more than act as mere notification to the public of contributor actions or the limitation would not pass constitutional muster. See Buckley v. Valeo, 424 U.S. 1, 25, 96 S.Ct. 612, 638, 46 L.Ed.2d 659, 686 (1976). Rather, the limitation is our legislatively determined method of avoiding potential quid pro quo arrangements. Id. It is a legislative determination that a contribution made in a sum under that limit cannot create a reasonable fear of bias in the mind of the litigant.
It is the prerogative of the legislature to determine what reasonable regulation should be enacted to avoid evil and corruption in the election process. It is not for the courts to determine the wisdom of the legislative policy but only to determine whether the legislative policy comports with the constitutional standard. Richman v. Shevin, 354 So.2d 1200 (Fla. 1977), cert. denied, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978). See Treiman v. Malmquist, 342 So.2d 972 (Fla. 1977) (The Legislature is charged with the responsibility and authority of regulating the election *1175 process so as to protect the integrity of the political process.).
Because I find that the legislature expressly authorized the making of a $1,000 campaign contribution to a judicial candidate, I must disagree with the en banc court's determination that a contribution of one-half that amount is a legally sufficient ground for judicial disqualification and I must conclude that my colleagues have undertaken to evaluate the wisdom of a legislative policy. However well-motivated, such action constitutes a violation of this court's function and, in effect, amounts to judicial legislation. See Holley v. Adams, 238 So.2d 401 (Fla. 1970). Further, while the en banc court stops short of determining a contribution of less than $500 to be sufficient basis for disqualification, it appears that if the en banc court is correct in its analysis and reasoning, then a contribution of any monetary amount would likewise prove sufficient grounds for disqualification. Responding to petitioner's subjective fears, the en banc court's opinion judicially limits litigants' and their attorneys' freedom of political association far beyond that limitation already imposed by our legislature. Further, if there is an area of law that requires a "bright line" rule, it is certainly the dollar limitations placed upon campaign contribution solicitations. These arguments add further support to my conclusion that this issue should be left to the legislature.
A further basis for my belief that standing alone a contribution of under $1,000 cannot form a legally sufficient ground for disqualification is found in the interplay of our statutes, rules of procedure, and canons of judicial conduct. Section 38.10, Florida Statutes (1987) creates the substantive basis for disqualification of a trial judge. Section 106.08(1)(e), Florida Statutes (1987) authorizes a person to contribute a sum not to exceed $1,000 toward the campaign of a judicial candidate. Florida Rule of Criminal Procedure 3.230(d) and Florida Rule of Civil Procedure 1.432(d) instruct the judge against whom a motion for disqualification is directed to determine the legal sufficiency of the motion. Canon 7 B(2) of the Code of Judicial Conduct facilitates the judicial candidate's insulation from campaign contributors. Where statutes operate on the same subject without positive inconsistency or repugnancy, courts must, if possible, construe them so as to preserve their force without destroying their evident intent. Mann v. Goodyear Tire & Rubber Co., 300 So.2d 666 (Fla. 1974); Graham v. Edwards, 472 So.2d 803 (Fla. 3d DCA 1985), review denied, 482 So.2d 348 (Fla. 1986).
The supreme court has, by the promulgation of Canon 7 B(2), eliminated any reason for fear of bias by a judge hearing a cause before litigants or counsel from whom he has received political contributions. It has done so by requiring that all judicial candidates solicit, receive, and disburse political campaign contributions through a campaign committee. Otherwise, there is no stated limitation, restriction, or impairment to the judicial candidate who has taken the required insulating steps. Moreover, the requirement that the claim of fear of bias be determined legally sufficient was established to prevent the disqualification process from being abused for the purposes of judge-shopping, delay or some other reason not related to providing for the fairness and impartiality of the proceeding. Livingston v. State, 441 So.2d 1083, 1086 (Fla. 1983). Accordingly, the asserted facts must be "reasonably sufficient" to create a "well founded fear" in the mind of a party that he or she will not receive a fair trial. See State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613 (1939); State ex rel. Brown v. Dewell, 131 Fla. 566, 179 So. 695 (1938).
Florida case law abundantly confirms the belief that in determining the legal sufficiency of a motion for disqualification the moving party's subjective misgivings as to a judge's impartiality will not be considered "reasonably sufficient" to justify a "well-founded fear" of prejudice. See Fischer v. Knuck, 497 So.2d 240, 242 (Fla. 1986). See also Ervin v. Collins, 85 So.2d 833 (Fla. 1956) (a suggestion of disqualification held not legally sufficient where one of the justices and one of the parties and their families were close, intimate, and personal friends, and where two of the justices were *1176 appointed to their office by one of the parties and each was a strong, personal, and political friend of the party); Marexcelso Compania Naviera v. Florida Nat'l Bank, 533 So.2d 805 (Fla. 4th DCA 1988) (plaintiff's allegations that trial judge's campaign staff had solicited endorsement and campaign contribution from defense counsel did not create existence of reasonable basis for plaintiff to doubt trial judge's impartiality), review denied sub nom. Marexcelso Compania Naviera v. S.N.W. Corp., 544 So.2d 200 (Fla. 1989); Mt. Sinai Medical Center v. Brown, 493 So.2d 512 (Fla. 1st DCA 1986) (motion for disqualification of deputy commissioner by reason of prejudice against employer's counsel, based on counsel's conclusion that deputy commissioner was believed that counsel acted to deter deputy commissioner's reappointment, failed to recite facts giving rise to counsel's belief that deputy commissioner was prejudiced against counsel, and hence, was properly denied); Micale v. Polen, 487 So.2d 1126 (Fla. 4th DCA 1986) (wife's motion for recusal of trial judge in domestic relations case was not adequate to require recusal on ground that after luncheon recess when wife and her counsel returned to court they entered trial judge's chambers and found seated there the husband, his attorney, his paralegal, and the trial judge, and observed husband's attorney engaged in conversation with the court, and allegations that based on that situation and the conduct of proceedings later that afternoon the judge was biased and prejudiced against her); McDermott v. Grossman, 429 So.2d 393 (Fla. 3d DCA 1983) (where a lawyer voices his opposition to election of a judge it is assumed that judge will not thereafter harbor prejudice against the lawyer affecting judge's ability to be impartial in cases in which the lawyer is involved); Raybon v. Burnette, 135 So.2d 228 (Fla. 2d DCA 1961) (motion for disqualification which stated only that plaintiff and his attorneys campaigned for one candidate for judgeship who was one of plaintiff's attorneys and that attorneys for defendant campaigned for successful candidate was insufficient to disqualify elected judge).
The problem that confronts the court today has long been open to argument and the need for campaign election law reform has been discussed by the media, commentators, and many other enlightened citizens. As a result of these debates and writings, the legislature, by joint resolution, resolved part of the problem with its recommendation that appellate judges be elected on a merit retention basis. The people accepted that proposal in November 1976. See Art. V, § 10(a), Fla. Const. At the time, however, the placement of trial judges on merit retention was considered politically unrealistic and it failed.
Various efforts have been made since then as exemplified in Richman v. Shevin to ameliorate the system. As we consider this problem, the Florida Bar has appointed a study group to reexamine merit retention for trial judges. Until this case was presented, there had never been an appellate decision in Florida dealing expressly with the disqualification of a judge solely on the basis of campaign contributions received. It seems to me that the reason is perfectly evident. The Florida electorate has purposely availed itself of a system of electing its trial judges in contested, although nonpartisan, elections.
Because it is the people's desire that trial judges submit to contested elections, I do not find that the people have a reasonable expectation that they can be free of all of the necessary evils that attend such an election. Other states addressing similar circumstances have rejected campaign contribution standing alone as a basis for a claim of bias. Cf. Ainsworth v. Combined Ins. Co. of Am., 774 P.2d 1003, 1020 (Nev. 1989) ("This state's constitution and code of judicial conduct specifically compel and countenance the election of all state judges, and leading members of the state bar play important and active roles in guiding the public's selection of qualified jurists. Under these circumstances, it would be highly anomalous if an attorney's prior participation in a justice's campaign could create a disqualifying interest, an appearance of impropriety or violation of due process sufficient to require the justice's recusal from *1177 all cases in which that attorney might be involved."); Woodland Hills Residents Ass'n, Inc. v. City Council, 26 Cal.3d 938, 164 Cal. Rptr. 255, 609 P.2d 1029, 1033 (1980) ("Public policy strongly encourages the giving and receiving of campaign contributions. Such contributions do not automatically create an appearance of unfairness."); Frade v. Costa, 342 Mass. 5, 171 N.E.2d 863 (1961) (So far as the contribution is a normal incident in a campaign for public office, "it does not tend to indicate any closer relationship between contributor and recipient than would ordinarily exist between members of the same local bar."); Rocha v. Ahmad, 662 S.W.2d 77 (Tex. Ct. App. 1963) ("A candidate for the bench who relies solely on contributions from nonlawyers must reconcile himself to staging a campaign on something less than a shoestring. If a judge cannot sit on a case in which a contributing lawyer is involved as counsel, judges who have been elected would have to recuse themselves in perhaps a majority of the cases filed in their courts. Perhaps the next step would be to require a judge to recuse himself in any case in which one of the lawyers had refused to contribute or, worse still, had contributed to that judge's opponent.").
If the electorate finds the practice offensive, then it is free to change the election system as it pertains to circuit judges or instruct its legislature to reduce campaign contributions from the present $1,000 limitation. Until the electorate speaks and instructs the legislature, it does not seem correct, however unseemly perceived, for the judicial branch to remedy the problem. The reported cases exemplify the judiciary's laudable efforts to insulate litigants from the appearances of impropriety and bias; however, this particular situation still appears to me to be beyond our reach.
I readily concur in certifying the issue to the Florida supreme court for resolution. From what I have said, it is obvious that I disagree with the question certified. I would certify the question as: Whether a campaign contribution of $1,000 or less by a litigant or his counsel to the political campaign of a trial judge or the judge's spouse, per se, creates a legally sufficient basis for the disqualification of the trial judge upon motion of the litigant? Because the supreme court is free to rephrase the question, I am content to simply join in the question posed by the en banc court.
SCHWARTZ, C.J., and BARKDULL and LEVY, JJ., concur.
SCHWARTZ, Chief Judge (dissenting).
I admire and agree entirely with Judge Nesbitt's dissenting opinion. Mostly by way of emphasis, I wish to add a few words of my own to his analysis.

I
Like Judge Nesbitt, I am entirely nonplussed by the majority's suggestion that, while $500 is so great a contribution as to establish the existence of a disqualifying prejudice, some undetermined lesser amount might not be. In my view quite apart from the obvious necessity of establishing a bright line rule of predictability and enforceability in all future such cases, and without resorting to any wisecrack which readily suggests itself about what the going rate might be for members of the Florida judiciary, if $500 is wrong, as the majority says, then $1.00 is wrong. I believe, however, there is nothing wrong with either sum or indeed any amount below the $1,000 provided by law.

II
As Judge Nesbitt's opinion cogently points out, the practice which the court holds requires disqualification is, directly to the contrary, fully supported and justified by our statutory and constitutional law. Even more, it is affirmatively encouraged by our legal and judicial system. It has long been regarded as a positive duty of members of the bar  who are of course in the position best to know the abilities of judges and candidates for the judiciary  to maintain and seek to elevate the stature of our bench by making just the type of contribution the majority condemns. Model Code of Professional Responsibility EC 8-6 *1178 (1986)[1]; see ABA Comm. on Professional Ethics and Grievances, Formal Op. 226 (1941)[2]; ABA Comm. on Professional Ethics and Grievances, Formal Op. 189 (1938).[3] In accordance with those obligations, and even without reference to their existence, lawyers should and  believe it or not  often do contribute to a judicial campaign simply because the recipient is regarded as the best candidate for the position, rather than in an attempt to curry favor. Indeed, the candidate may be the object of a contribution just because his character is such, that, as a sitting judge, he would simply not think to show favor to a lawyer just because he had contributed to a successful campaign. And there is no showing on this record  which is based entirely on a binding presumption of bias  that any such proper motivation was not the one which activated the particular contribution. Thus, the majority has taken the presumption of regularity and propriety, which is the foundation of our legal system, see, e.g., Robinson v. State, 325 So.2d 427, 429 (Fla. 1st DCA 1976); State v. Gillespie, 227 So.2d 550, 555 (Fla. 2d DCA 1969), and which has heretofore applied even to lawyers, and turned it upside down and inside out into a conclusive presumption of impropriety. We cannot abide treating an act which is both permitted and encouraged to be so considered.
I would emphasize, moreover, that it will not do for the majority to suggest that, while the practice of lawyers' contributions may be permissible, since its appearance to the uninformed may be otherwise, it must therefore be disapproved. We cannot operate a judicial system, or indeed a society, on the basis of the factually unsubstantiated perceptions of the cynical and distrustful. For example, in this very area, it would seem not unreasonable that a member of the community might think that a judge could be automatically biased or favorable toward a lawyer or litigant who is a member of the judge's own race, gender, religion, or nationality. Yet, because we must and do assume, in the absence of something to the contrary, that a judge will abide by his oath and not permit any such *1179 consideration to influence his or her judgment, we rightly refuse to accept a suggestion of this kind as a basis for disqualification. I see no difference here. We should not conclude that a judge will act wrongly, particularly as a result of a lawful action, unless there is some reason to do so. Under the contrary rule  which has unfortunately been adopted by the court  our system will be run by those who disbelieve in it the most. I cannot agree to the triumph of such an attitude.

III
Of course, the elective system of trial judges is the only one we now have. At oral argument, however, it was hopefully suggested by at least one counsel for the petitioners, that the panel decision should be adopted as a means of undermining the system and replacing it with the supposedly preferable one of merit selection and retention. It is clear that, overtly desired or not, the majority view will have that effect by precluding those most concerned with the system from entering into it.[4] But, as Judge Nesbitt also makes clear, whatever our view of judicial selection may be, it is not our business or our right to install the system we prefer by sabotaging the one that exists. We should instead attempt to make the system the people have adopted work within our constitutional and legal framework. The majority opinion does not do so.
BARKDULL, NESBITT and LEVY, JJ., concur.
NOTES
[1] We express our appreciation to The Florida Bar and the Dade County Bar Association for responding to our invitation to submit briefs as amici curiae.
[2] Although not a factor in our analysis, Breakstone states that while his counsel and opposing counsel were in the trial judge's anteroom awaiting a hearing in the instant case, the husband visited the trial judge in chambers. Counsel were admitted to the trial judge's chambers on the husband's departure. The suggestion is that there was a specific opportunity for the husband to mention the $500 contribution by the plaintiff's counsel sitting in the anteroom, and that such information, however innocently imparted, would inevitably create a favorable bias toward the $500 contributor.

Breakstone's counsel became aware of the $500 contribution two days after the hearing and promptly moved to disqualify the trial judge. The motion was therefore timely. Fla. R.Civ.P. 1.432(c); Fischer v. Knuck, 497 So.2d 240, 243 (Fla. 1986) ("motion to disqualify [must] be made within a reasonable time after discovering the facts upon which the motion is based").
[3] By the time the motion for disqualification was heard, the election was over. The husband's candidacy was unsuccessful.
[4] The first district has recently certified to the Florida Supreme Court the question whether a different legal standard applies where there is a second motion to disqualify filed by the same litigant. St. George Island, Ltd. v. Rudd, 547 So.2d 958, 960-61 (Fla. 1st DCA 1989).
[5] See Roady, Ten Years of Florida's "Who Gave It  Who Got It" Law, 27 Law & Contemp.Probs. 434, 434-37 (1962); ch. 26819, 26870, Laws of Fla. (1951). Florida imposed contribution limits after the Kefauver Committee disclosed that three individuals had each contributed more than $150,000 to Florida's successful 1948 gubernatorial candidate. Roady, supra, at 436 n. 9. See generally Smith v. Ervin, 64 So.2d 166, 169-70 (Fla. 1953).
[6] Commentators, judges, and attorneys have repeatedly noted the potential for bias, or the appearance of bias, when contributions are drawn from those who appear before a judge. E.g., Alfini & Brooks, Ethical Constraints on Judicial Election Campaigns: A Review and Critique of Canon 7, 77 Ky.L.J. 671 (1988-89); Anderson, Ethical Problems of Lawyers and Judges in Election Campaigns, 50 A.B.A.J. 819 (1964); Baum, Should Judges Know Who Gave to Their Campaigns?, 60 Judicature 258 (1977); Johnson, Lawyer Judicial Campaign Contributions Revisited, 50 Clev.B.J. 2 (Nov. 1978), 50 Clev.B.J. 58 (Jan. 1979); Liles, The Case for Merit Selection/Retention of Trial Judges, Vol. LXIII, No. 3 Fla.B.J. 5 (Mar. 1989); Richman, A New Solution to an Old Problem: The Dade Judicial Trust Fund, 50 Fla.B.J. 478 (1976); Schotland, Elective Judges' Campaign Financing: Are State Judges' Robes the Emperor's Clothes of American Democracy?, 2 J.L. & Pol. 57 (1985); Utter, Selection and Retention  A Judge's Perspective, 48 Wash.L.Rev. 839 (1973); Note, The Ethical Dilemma of Campaigning for Judicial Office: A Proposed Solution, 14 Ford. Urb.L.J. 353 (1986); Note, Safeguarding the Litigant's Constitutional Right to a Fair and Impartial Forum: A Due Process Approach to Improprieties Arising from Judicial Campaign Contributions from Lawyers, 86 Mich.L.Rev. 382 (1987); Note, Recusal of Judges for Reasons of Bias or Prejudice: A Survey of Florida Law  Proposal for Reform, 11 Nova L.J. 201 (1986); Note, Disqualifying Elected Judges from Cases Involving Campaign Contributors, 40 Stan.L. Rev. 449 (1988); Address by Justice Ben F. Overton, Trial Judges and Political Elections: A Time for Reexamination, University of Florida, April 3, 1989.
[7] Canon 5 C(5) is cited here by analogy. The commentary to Canon 5 C(4)(c) excludes campaign contributions (regulated by Canon 7) from the definition of gifts (regulated by Canon 5). That exclusion is reasonable here, since the function of Canon 5 C(5) is to produce public disclosure of gifts, but spousal campaign contributions are already the subject of public disclosure by law.
[8] Given that Raybon was decided in 1961, when the realities of fund-raising for judicial elections were different, the lack of emphasis on the campaign contribution aspect of the case is not surprising.
[9] Our court has previously followed Caleffe in Roudner v. MacKenzie, 536 So.2d at 299. Cf. Fla.Sup.Ct.Comm. on Standards of Conduct Concerning Judges, Op. 84-12 (judge should disqualify himself or herself in all cases involving an announced opponent); 84-23 (same for defeated opponent until judge's impartiality can no longer reasonably be questioned). Contra Parsons v. Motor Homes of America, 465 So.2d 1285, 1290 (Fla. 1st DCA 1985) (disqualification not required in case involving announced opponent but court suggested judge should have recused himself).
[10] Respondent also relies on Rocha v. Ahmad, 662 S.W.2d 77 (Tex. Ct. App. 1983), which contains reasoning contrary to the position we adopt.

The Texas decisions in this area are unpersuasive. According to Rocha, Texas has no counterpart to our section 38.10, Florida Statutes, and confines disqualification to cases of consanguinity or pecuniary interest. 662 S.W.2d at 78-79 n. 2. Canon 3 C of the Code of Judicial Conduct has been narrowly interpreted in Texas, id., and in any event is not deemed to supply grounds for disqualification. Id. at 78; Texaco, Inc. v. Pennzoil Co., 729 S.W.2d 768, 844 (Tex. Ct. App. 1987) (error refused n.r.e. Nov. 2, 1987), cert. dismissed, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988) ($10,000 contribution by counsel to presiding judge while lawsuit pending). The size and nature of contributions permitted under the Texas standard has been the subject of much criticism. See generally, e.g., Alfini & Brooks, supra note 6, at 671; Schotland, supra note 6, at 61; Note, supra note 6, 86 Mich.L.Rev. at 404-05; Note, supra note 6, 40 Stan.L.Rev. at 449-52, 449-60; Overton, supra note 6, at 16.
[11] If we were compelled to examine Florida's disclosure laws for an indication of a de minimis level below which a contribution would be deemed insignificant as a matter of law, the level would be substantially below that involved in the present case. For example, the Code of Judicial Conduct requires judges to publicly disclose all gifts in excess of $100, Fla.Bar Code Jud.Conduct, Canon 5 C(4)(c), and with certain narrow exceptions, all gifts of any size are prohibited if the donor "is... a party or other person whose interests have recently come or may likely come before [the judge]." Id. All other elected officials must disclose gifts or other contributions of $25 or more. § 111.011, Fla. Stat. (1987). More extensive disclosure is required for campaign contributions over $100 than is true for contributions $100 or less. § 106.07(4)(a)(1), Fla. Stat. (1987).
[12] Respondent and amicus curiae also misconceive the function of the Code of Judicial Conduct and the disqualification statute. The Code and statute ordinarily apply to legal activity. For example, it is legal for a judge to hold shares in a corporation, but the judge is disqualified from hearing matters pertaining to the corporation. Fla.Bar Code Jud.Conduct Canon 3 C(1)(c). Similarly, it is legal to accept a contribution within the statutory limits, but it does not follow that section 38.10 and the Code of Judicial Conduct are inapplicable where the judge is asked to hear a case involving a large contributor. There is a fundamental conceptual flaw in the premise that because an activity is legal, it is exempt from scrutiny under section 38.10 or the Code of Judicial Conduct.
[13] A 1985 multi-state survey suggests that many judges follow a practice of recusing themselves, or proceeding only with consent of the parties, when contributors are before them. Note, supra note 6, 14 Ford.Urb.L.J. at 402-04.
[1] Ethical Consideration 8-6 provides:

Judges and administrative officials having adjudicatory powers ought to be persons of integrity, competence, and suitable temperament. Generally, lawyers are qualified, by personal observation or investigation, to evaluate the qualifications of persons seeking or being considered for such public offices, and for this reason they have a special responsibility to aid in the selection of only those who are qualified. It is the duty of lawyers to endeavor to prevent political considerations from outweighing judicial fitness in the selection of judges. Lawyers should protest earnestly against the appointment or election of those who are unsuited for the bench and should strive to have elected or appointed thereto only those who are willing to forego pursuits, whether of a business, political, or other nature, that may interfere with the free and fair consideration of questions presented for adjudication. Adjudicatory officials, not being wholly free to defend themselves, are entitled to receive the support of the bar against unjust criticism. While a lawyer as a citizen has a right to criticize such officials publicly, he should be certain of the merit of his complaint, use appropriate language, and avoid petty criticisms, for unrestrained and intemperate statements tend to lessen public confidence in our legal system. Criticisms motivated by reasons other than a desire to improve the legal system are not justified.
[2] "[W]e are of the opinion that, whenever a candidate for judicial office merits the endorsement and support of lawyers, the lawyers may make financial contributions toward the campaign if its cost, when reasonably conducted, exceeds that which the candidate would be expected to bear personally."
[3] As stated in Opinion 189:

Lawyers are better able than laymen to appraise accurately the qualifications of candidates for judicial office. It is proper that they should make that appraisal known to the voters in a proper and dignified manner. A lawyer may with propriety endorse a candidate for judicial office and seek like endorsement from other lawyers. But the lawyer who endorses a judicial candidate or seeks that endorsement from other lawyers should be actuated by a sincere belief in the superior qualifications of the candidate for judicial service and not by personal or selfish motives; and a lawyer should not use or attempt to use the power or prestige of the judicial office to secure such endorsement. On the other hand, the lawyer whose endorsement is sought, if he believes the candidate lacks the essential qualifications for the office or believes the opposing candidate is better qualified, should have the courage and moral stamina to refuse the request for endorsement.
[4] There is no doubt of the chilling effect of the majority decision upon lawyers' campaign contributions. Any contribution to the campaign of a successful judge by an attorney who simply thinks that the judge is a better candidate will ironically result in the judge's disqualification at the behest of the opposing lawyer, even though no impropriety of any kind has even been suggested. Indeed, the only way to be "safe" in a judicial campaign would be to contribute to the loser, with the ultimate result (which the majority does not make clear but which flows inevitably from its conclusion) that the contributing attorney may disqualify the winner as inevitably prejudiced against him. It may be doubted that this kind of intricate electoral prediction-making will result in a meaningful amount of contributions from the bar.

The upshot will be that judicial elections may turn, not upon the contributions of those who professionally know and care about the judiciary but rather upon candidates with personal and family financial resources at their command. This may or may not be a good idea. The points are that the issue is not for us to determine and that it is contrary to the scheme apparently approved by those who have that responsibility, the people and the legislature.