441 So.2d 1083 (1983)
Connie Moore LIVINGSTON, Appellant,
v.
STATE of Florida, Appellee.
No. 59846.
Supreme Court of Florida.
October 27, 1983.
Rehearing Denied January 11, 1984.
*1084 Melanie Ann Hines, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
The appellant, Connie Moore Livingston, appeals his conviction of first-degree murder and the imposition of the death sentence. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We conclude that under the special circumstances of this case the trial judge should have disqualified himself from presiding in appellant's trial and, consequently, we must reverse appellant's conviction and sentence and remand this case for a new trial. It should be understood that the trial judge's action in denying the motion for disqualification was influenced by a decision of this Court which rejected a request by the same attorney who now represents appellant to disqualify the same judge in all cases in which the attorney served as counsel or was a party. As we have explained in this opinion, that prior action does not control this case. To aid in appellant's retrial, we have addressed the question submitted concerning the use of a prior criminal offense to establish identity and find that this evidence is admissible in the retrial.
The appellant, who is retarded, was charged with a brutal first-degree murder and sexual battery. The appellant's mother retained Charles A. Wade to represent her son. Prior to his arraignment, appellant filed a motion, verified by him, for the disqualification of Judge Erwin Fleet. In this motion, which was filed under section 38.10, Florida Statutes (1979), appellant set forth specific conflicts between his attorney and the trial judge, concluding that "Judge Fleet is so biased and prejudiced and has so much animosity against his counsel, Charles A. Wade, that he, Connie Livingston, would be unable to get a fair and impartial trial in this case... ."
Wade filed a supporting affidavit which described several incidents establishing this alleged animosity between himself and Judge Fleet. As alleged, these incidents, which occurred over a period of twenty-five years, were: (1) that in 1958, Fleet, who had been appointed to a circuit judgeship in 1957, was defeated by Wade in an election for that position; (2) that during Wade's service as a circuit judge, Fleet appeared before him as a lawyer and angry words exchanged between them, resulting in Fleet's threat to petition for Wade's disqualification in future cases; (3) that after Fleet was elected to another circuit judgeship and Wade, who was still a circuit judge, became the administrative judge for the county, there were numerous crossings between the judges; (4) that after Wade retired from his circuit judge position and began his private law practice he was held in contempt of court by Judge Fleet in Wade's first contested hearing before him; and (5) that Judge Fleet had directed a grand jury to investigate a criminal matter *1085 involving Wade which had been nol-prossed by the state attorney and had appointed as grand jury foreman a man whom Fleet had unsuccessfully represented before Wade when he was a circuit judge. This latter incident concerning the grand jury investigation occurred in 1979, approximately five months prior to the commencement of appellant's trial, and, as indicated in the record in this case, received local newspaper publicity.
The appellant's motion for disqualification also contained two affidavits from individuals who stated that they were not related to the parties or the attorneys and that to the best of their knowledge it would be virtually impossible for Wade or any of his clients to get a fair and impartial hearing before Judge Fleet. On April 16, 1980, Judge Fleet denied the motion for disqualification, finding that the motion and accompanying affidavits were legally insufficient under the requirements of section 38.10, Florida Statutes (1979). Wade renewed the motion for disqualification twice during subsequent pre-trial hearings and again at the commencement of the trial. Each renewal was denied. The denial of the motion was also used as a ground for a motion for new trial, which was also denied.
First, we address the previous action in which Wade sought to disqualify Judge Fleet in all cases. In December, 1979, Wade filed a suggestion for writ of prohibition in the Supreme Court of Florida, seeking to have Fleet disqualified from hearing any case or matter involving Wade either as an individual or as an attorney. This Court, without opinion, denied the suggestion for the writ on February 14, 1980, approximately two months before the commencement of appellant's trial. See Wade v. Fleet, 383 So.2d 1204 (Fla. 1980).
The state contends that this Court's denial of the writ without opinion is controlling in this case. We realize that the allegations made by the appellant in his motion for disqualification in this case are basically the same as those made by Wade in his previously denied petition for writ of prohibition. It is important to note, however, that the relief sought by Wade in his prior petition was a general prohibition against Judge Fleet's hearing any of Wade's cases. That petition was not by a litigant seeking disqualification of the judge in any particular case, as appellant's motion does in the instant case.
This Court has clearly held that a lawyer's request for a general disqualification of a judge will not be granted. In Ginsberg v. Holt, 86 So.2d 650, 651-52 (Fla. 1956), we said that
[t]here is no provision in the statutes or the decisions for a blanket decree restraining a particular judge from hearing all cases in which a particular attorney may appear in his professional capacity as an officer of the court and we unreservedly decline to introduce such a novel and revolutionary procedure.

(Emphasis added.) Because our denial of the writ of prohibition in Wade v. Fleet was not accompanied by an opinion, we recognize that Judge Fleet, as well as the prosecution, could have construed the denial to mean that the allegations in the affidavit were insufficient to require the disqualification of Judge Fleet in any particular case arising in the future. Our prior decision in Wade v. Fleet, however, is not controlling and appellant's motion for disqualification must be considered on the basis of whether, under the circumstances, he has a reasonable fear that he would not receive a fair trial in this case.
This Court has recognized the sensitivity and seriousness involved whenever the issue of judicial prejudice is raised. We have stated that:
Prejudice of a judge is a delicate question to raise but when raised as a bar to the trial of a cause, if predicated on grounds with a modicum of reason, the judge against whom raised, should be prompt to recuse himself. No judge under any circumstances is warranted in sitting in the trial of a cause whose neutrality is shadowed or even questioned.
... .
... It is a matter of no concern what judge presides in a particular cause, but *1086 it is a matter of grave concern that justice be administered with dispatch, without fear or favor or the suspicion of such attributes. The outstanding big factor in every lawsuit is the truth of the controversy. Judges, counsel, and rules of procedure are secondary factors designed by the law as instrumentalities to work out and arrive at the truth of the controversy.
The judiciary cannot be too circumspect, neither should it be reluctant to retire from a cause under circumstances that would shake the confidence of litigants in a fair and impartial adjudication of the issues raised.
Dickenson v. Parks, 104 Fla. 577, 582-84, 140 So. 459, 462 (1932). This Court has also expressed the view that:
"Every litigant, including the State in criminal cases, is entitled to nothing less than the cold neutrality of an impartial judge." It is the duty of courts to scrupulously guard this right of the litigant and to refrain from attempting to exercise jurisdiction in any matter where his qualification to do so is seriously brought in question. The exercise of any other policy tends to discredit and place the judiciary in a compromising attitude which is bad for the administration of justice.
State ex rel. Mickle v. Rowe, 100 Fla. 1382, 1385, 131 So. 331, 332 (1930).
In Florida, there are four separate expressions concerning the disqualification of trial judges, which are set forth in: (1) The Code of Judicial Conduct Canon 3-C; (2) section 38.10, Florida Statutes (1981); (3) Florida Rule of Criminal Procedure 3.230, which was adopted verbatim by this Court from a former statute, section 911.01, Florida Statutes (1967); and (4) Florida Rule of Civil Procedure 1.432.
The Code of Judicial Conduct sets forth basic principles of how judges should conduct themselves in carrying out their judicial duties. Canon 3-C(1) states that "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned... ." This is totally consistent with the case law of this Court, which holds that a party seeking to disqualify a judge need only show "a well grounded fear that he will not receive a fair trial at the hands of the judge. It is not a question of how the judge feels; it is a question of what feeling resides in the affiant's mind and the basis for such feeling." State ex rel. Brown v. Dewell, 131 Fla. 566, 573, 179 So. 695, 697-98 (1938). See also Hayslip v. Douglas, 400 So.2d 553 (Fla. 4th DCA 1981). The question of disqualification focuses on those matters from which a litigant may reasonably question a judge's impartiality rather than the judge's perception of his ability to act fairly and impartially.
When a party believes he cannot obtain a fair and impartial trial before the assigned trial judge, he must present the issue of disqualification to the court in accordance with the process designed to resolve this sensitive issue. The requirements set forth in section 38.10, Florida Statutes (1981), Florida Rule of Criminal Procedure 3.230, and Florida Rule of Civil Procedure 1.432 were established to ensure public confidence in the integrity of the judicial system as well as to prevent the disqualification process from being abused for the purposes of judge-shopping, delay, or some other reason not related to providing for the fairness and impartiality of the proceeding. The same basic requirements are contained in each of these three processes. First, there must be a verified statement of the specific facts which indicate a bias or prejudice requiring disqualification. Second, the application must be timely made. Third, the judge with respect to whom the motion is made may only determine whether the motion is legally sufficient and is not allowed to pass on the truth of the allegations. Section 38.10 and Florida Rule of Criminal Procedure 3.230 also require two affidavits stating that the party making the motion for disqualification will not be able to receive a fair trial before the judge with respect to whom the motion is made, as well as a certificate of good faith signed by counsel for the party making the motion. *1087 Section 38.10 requires that these affidavits be from persons unrelated to the parties or counsel. No affidavits are required under Florida Rule of Civil Procedure 1.432.
Section 38.10 gives to litigants a substantive right to seek the disqualification of a trial judge. Because, however, the actual process of the disqualification of a judge is procedural, Florida Rule of Criminal Procedure 3.230, rather than the statute, controls the disqualification process. See Jackson v. Korda, 402 So.2d 1362 (Fla. 4th DCA 1981), State ex rel. Aguiar v. Chappell, 344 So.2d 925 (Fla. 3d DCA 1977). See also Benyard v. Wainwright, 322 So.2d 473 (Fla. 1975); In re Clarification of Florida Rules of Practice & Procedure, 281 So.2d 204 (Fla. 1973). We reject the state's contention that appellant's motion is invalid because it was filed pursuant to section 38.10 rather than under Florida Rule of Criminal Procedure 3.230. The substance of the procedural requirements of rule 3.230 is contained in the appellant's motion. In considering the sufficiency of the allegations to meet the requirements of our procedural process, the technical requirements of the contents of the affidavits need not be strictly applied but, rather, they will be deemed sufficient "[i]f taken as a whole, the suggestion and supporting affidavits are sufficient to warrant fear on the part of" a party that he will not receive a fair trial by the assigned judge. Parks, 141 Fla. at 519, 194 So. at 614-15.
The facts alleged in the motion need only show that "the party making it has a well grounded fear that he will not receive a fair trial at the hands of the judge." Dewell, 131 Fla. at 573, 179 So. at 697. "If the attested facts supporting the suggestion are reasonably sufficient to create such a fear, it is not for the trial judge to say that it is not there." Parks, 141 Fla. at 518, 194 So. at 614. Further, "it is a question of what feeling resides in the affiant's mind and the basis for such feeling." Dewell, 131 Fla. at 573, 179 So. at 697-98.
The state argues that the allegations made in appellant's motion for disqualification fail to show prejudice towards counsel to the degree that it is likely to prejudice appellant. This Court has expressly held that a judge may be disqualified due to prejudice towards an attorney where the prejudice "is of such degree that it adversely affects the client." Ginsberg v. Holt, 86 So.2d 650, 651 (Fla. 1956). See also State ex rel. Fuente v. Himes, 160 Fla. 757, 36 So.2d 433 (Fla. 1948); Parks. Prejudice against a party's attorney can be as detrimental to the interests of that party as prejudice against the party himself. What is important is the party's reasonable belief concerning his or her ability to obtain a fair trial. A determination must be made as to whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial. As noted, the last incident involving Judge Fleet and Mr. Wade occurred just five months prior to the commencement of appellant's trial. Given the record in this case identifying the disputes which have arisen between the judge and the lawyer over a substantial period of time, we must conclude that the appellant could have a reasonable fear that he could not receive a fair trial. This is especially true in this prosecution for first-degree murder in which appellant's life is at stake and in which the circuit judge's sentencing decision is so important.
We have concluded that Livingston's verified motion and supporting documents were sufficient under Florida Rule of Criminal Procedure 3.230 to require the trial judge to disqualify himself. We must vacate the judgment and sentence and remand with directions to proceed with a new trial. Further hearings at the trial court level on the issue of disqualification would not, in our view, be beneficial. We therefore direct that the chief judge of the circuit assign another judge for the retrial of this case.
To aid in the retrial of this case, we address the question of the admissibility of testimony concerning an offense committed by appellant on March 29, 1980, in Pensacola, Florida. Appellant asserts that the testimony *1088 concerning the Pensacola offense does not qualify as similar fact evidence under the guidelines of Williams v. State, 110 So.2d 654 (Fla.) cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). We find that there was a uniqueness about the appellant's modus operandi which, in our view, made the evidence clearly admissible on the issue of identity.
We find it inappropriate to discuss any of the other issues raised in the case. For the reasons expressed we reverse appellant's conviction and sentence and remand for a new trial.
It is so ordered.
ADKINS, OVERTON, McDONALD and EHRLICH, JJ., concur.
BOYD, J., dissents with an opinion, in which ALDERMAN, C.J., concurs.
BOYD, Justice, dissenting.
I dissent to the judgment of the Court that a new trial is required because of appellant's pre-trial perception of prejudice against his lawyer on the part of the trial judge. I believe that a trial judge's denial of a motion for disqualification pursuant to Florida Rule of Criminal Procedure 3.230 must be evaluated differently after there has been a trial and conviction than when such a motion is reviewed by way of a petition for a writ of prohibition prior to trial.
I agree with the majority's statement that Rule 3.230 provides a procedure for effectuating substantive rights bestowed by section 38.10, Florida Statutes (1981). Former section 911.01, Florida Statutes (1969), pertained to the same subject but was a statute dealing with criminal procedure and was therefore superseded by Rule 3.230 and was accordingly later repealed. Ch. 70-339, § 180, Laws of Fla. Section 38.10 remains as a substantive provision regarding the rights of litigants to receive justice at the hands of impartial judges. Only the procedural elements of section 38.10 have been superseded in criminal cases by Rule 3.230.
I also agree that by judicial interpretation the references in both the statute and the rule to prejudice in favor of or against a party have been expanded to encompass also prejudice in favor of or against an attorney for a party. State ex rel. Fuente v. Himes, 160 Fla. 757, 36 So.2d 433 (1948); State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613 (1939). When this Court denied Charles Wade's petition to prohibit Judge Fleet from sitting on any case in which Wade might appear as an attorney, Wade v. Fleet, 383 So.2d 1204 (Fla. 1980), we were following a long-standing precedent rejecting such a "blanket decree" as a "novel and revolutionary procedure." Ginsberg v. Holt, 86 So.2d 650, 651-52 (Fla. 1956). Recognition of animosity toward a lawyer as a cause of prejudice against the lawyer's client does carry with it the danger, however, that although the lawyer may not be able to get a "blanket decree" of disqualification, he may be able to achieve the same result one case at a time. From the perspective of concern for the sound and efficient administration of justice, it may be far more reasonable, in the case of a lawyer who is going to transfer a well-grounded fear of prejudice to all of his clients, to require him to remove his practice to another circuit than to require the judge to recuse himself every time the lawyer appears in his courtroom.
Rule 3.230 provides that when a motion for disqualification of the judge is filed in a criminal case, the judge shall consider the motion only to determine its legal sufficiency and "shall not pass on the truth of the facts alleged nor adjudicate the question of disqualification." When a trial judge denies a motion for disqualification either by improperly passing on the truth of the allegations or adjudicating the question of disqualification, or by erroneously finding a legally sufficient motion to be insufficient, the moving party has one further remedy to exhaust before proceeding to trial before the judge in question. Although such a pre-judgment order is not appealable, the moving party can seek review by petitioning the court with appellate jurisdiction for a writ of prohibition. See, e.g., Bundy v. Rudd, 366 So.2d 440 (Fla. 1978); Wilson v. *1089 Renfroe, 91 So.2d 857 (Fla. 1956); State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613 (1939); Dickenson v. Parks, 104 Fla. 577, 140 So. 459 (1932); State ex rel. Zacke v. Woodson, 399 So.2d 7 (Fla. 5th DCA 1981). The writ of prohibition affords a means of reviewing the trial court's determination of the sufficiency of the motion, or a remedy for its passing on the truth of the allegations, before the expenditure of judicial time and labor on the conduct of a trial.
Rule 3.230 provides an extraordinary protection for the right of an accused to a fair trial in that well-grounded allegations of subjective fear that the judge is prejudiced are sufficient to require recusal. The judge is not permitted to evaluate the merits of a legally sufficient motion. The reason for this procedure is to secure inviolate the appearance and perception of complete impartiality and to avoid the creation of "an intolerable adversary atmosphere" in the proceedings. Bundy v. Rudd, 366 So.2d 440, 442 (Fla. 1978) (quoting Department of Revenue v. Golder, 322 So.2d 1, 7 (Fla. 1975) (on reconsideration)). This valuable procedural right, together with the writ of prohibition as a means of review, protect the accused from having to go to trial before a certain judge when the accused has a well-grounded fear that he will not receive a fair trial. If the accused fails to seek review of the judge's denial of the disqualification motion, however, and proceeds to trial, he should be deemed to have waived the extraordinary procedural right provided for by Rule 3.230.
I do not say that by not seeking prohibition the accused waives the right to be tried before an impartial judge. Such right is substantive and fundamental and abides with the accused throughout the proceedings. But the procedural right afforded by Rule 3.230, which almost gives the accused a unilateral "peremptory challenge" to the first judge assigned to his case, should not be evaluated on appeal after trial and judgment under the same standards as would have applied if the accused had sought review by writ of prohibition before the commencement of the trial. After the trial has already been held, the appellate court can examine the record of the proceedings and treat the question as one of impartiality versus prejudice in fact. If an atmosphere of partiality did in fact develop at the trial then a new trial should be ordered. But the expenditure of substantial time and labor by the court, jury, and lawyers should not be held for naught because of an erroneous ruling under Rule 3.230 when the appellant could have sought review before trial by means of a petition for writ of prohibition.
It is interesting to note that something like the approach I am proposing has been widely utilized by the appellate courts of Florida in dealing with the issue of disqualification of trial judges for prejudice. When a trial judge's denial of a motion for disqualification is brought before the appellate court for review by means of a pre-trial petition for writ of prohibition, the courts tend to apply the rule strictly and inquire only into the sufficiency of the motion and supporting affidavits to state a well-grounded fear of partiality. See, e.g., Bundy v. Rudd; Dickenson v. Parks; State ex rel. Allen v. Testa, 414 So.2d 38 (Fla. 3d DCA 1982); Jackson v. Korda, 402 So.2d 1362 (Fla. 4th DCA 1981); State ex rel. Zacke v. Woodson, 399 So.2d 7 (Fla. 5th DCA 1981); State ex rel. Aguiar v. Chappell, 344 So.2d 925 (Fla. 3d DCA 1977). On the other hand, when defendants wait until after their trials to seek review of the orders of denial in conjunction with their appeals, the appellate courts tend to evaluate the claims of prejudice on the merits. See, e.g., Jones v. State, 411 So.2d 165 (Fla.), cert. denied, ___ U.S. ___, 103 S.Ct. 189, 74 L.Ed.2d 153 (1982); Tafero v. State, 403 So.2d 355 (Fla. 1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694 (1982); Mikenas v. State, 367 So.2d 606 (Fla. 1978); Dempsey v. State, 415 So.2d 1351 (Fla. 1st DCA), review denied, 424 So.2d 761 (Fla. 1982); Van Fripp v. State, 412 So.2d 915 (Fla. 4th DCA 1982); Yesbick v. State, 408 So.2d 1083 (Fla. 4th DCA), review dismissed, 417 So.2d 331 (Fla. 1982).
I therefore conclude that by failing to seek appellate court prohibition of the judge's presiding over his trial, appellant has waived the right to have his motion evaluated under the standards set out in Rule 3.230. Lest I be misunderstood, I reiterate *1090 that I am not saying he waived the right to be tried before an impartial judge. The record of the trial is before us. If appellant could demonstrate from that record that during his trial the presiding judge deviated for a single instant from that cold neutrality that is demanded of a judge, then appellant would be entitled to a new trial. Moreover, in my view, if the circuit judge who presided at trial could be shown to have in fact allowed his unfavorable relationship with appellant's lawyer to affect him and his actions in his official capacity as judge to appellant's detriment, the result should be not only a new trial for appellant but a complaint from the justices of this Court to the Judicial Qualifications Commission concerning the conduct of the trial court judge.
I have carefully reviewed the entire record of appellant's trial. I conclude that the alleged mutual dislike of Judge Fleet and attorney Wade had no substantial effect on the conduct of the trial; the alleged prejudice of the judge against the lawyer was not visited upon the client in any significant manner discernible from the record. On the basis of this review of what actually happened I would reject appellant's demand for a new trial for violation of Rule 3.230.
The evidence showed that the victim was bludgeoned to death with a glass soft-drink bottle. Her sexual organs were violently molested. There was competent, substantial evidence for the jury to conclude that appellant was the perpetrator of these acts. The defendant's lawyer was allowed fair and ample opportunity to contest the state's interpretation of the evidence and to develop his theory of defense.
Appellant was properly found competent to stand trial and the procedure by which this issue was determined was fair and proper. The psychiatrists' written reports were a proper basis for the judge's determination. Fowler v. State, 255 So.2d 513 (Fla. 1971). The psychiatrists found appellant to be mentally slow but competent to understand the proceedings.
There was evidence of an unrelated criminal attack committed by appellant. This evidence was properly admitted under Williams v. State, 110 So.2d 654 (Fla. 1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1960).
The appellant's confession was found through proper procedures to have been voluntarily given and was therefore properly admitted into evidence. All of appellant's other arguments on the admissibility of particular items of evidence and the fairness of the trial procedure are without merit.
My review of the sentencing proceeding reveals that it too was conducted in a constitutionally fair manner. As aggravating circumstances the court found that appellant had previously been convicted of a felony involving the use or threat of violence; that the murder was especially heinous, atrocious, or cruel; and that it was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. These findings were supported by the evidence.
The court found one mitigating circumstance as follows:
FINDING: From the evidence, the defendant, CONNIE LIVINGSTON, was under the influence of emotional disturbance when he committed the murder and sexual battery of which he was convicted. Previous psychological examinations showed evidence of diminished capacity of the defendant, but not to the extreme that it deprived him of the ability to form the intent to commit a premeditated homicide.
The court concluded that the aggravating circumstances outweighed the single mitigating circumstance found. This conclusion was reasonable and proper under the evidence.
I would affirm the convictions of first-degree murder and sexual battery and the sentence of death. I dissent to the order granting a new trial.
ALDERMAN, C.J., concurs.