BASKIN, Judge
(dissenting).
When a judge discards the mantle of impartiality, it becomes incumbent on the appellate court to uphold the rights of the litigant. Mrs. Nateman’s crippling blow was administered not by her opponent, but by the assigned arbiter whose role it is to decide which facts are the true facts. Instead, the trial judge closed his mind to Mrs. Nateman’s testimony as to how the parties lived and told her how the parties should have lived. In so doing, the court showed it would superimpose its own lifestyle on the parties’ standard of living. The court apparently rejected the Supreme Court’s pronouncement in Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), that the wife is entitled to be maintained in the accustomed manner of the marriage, thereby demonstrating its bias against Mrs. Nateman.
The remedy for a litigant’s fear of biased judicial trial conduct is disqualification. Mrs. Nateman invoked procedures for disqualification before the trial court to no avail. It is now the obligation of this court to implement those procedures and to order the judge to relinquish the case because the. trial judge, however well-meaning, caused Mrs. Nateman to fear he would not remain impartial. Mrs. Nateman reasonably feared the judge would not give her a fair trial; that reasonable fear entitles her to be heard by a different judge.
The majority finds that Mrs. Nateman may not seek to disqualify the trial judge for two reasons: 1) because no prehearing bias existed and 2) because the majority believes she should seek appellate review rather than disqualification. The majority concludes that mid-hearing motions for re-cusal would wreak administrative havoc in the circuit court. The holding is so at odds with existing law that I am compelled to dissent. No authority requires a movant to allege “pre-hearing bias” to succeed on a motion for disqualification, and motions for disqualification must be made prior to receiving an adverse ruling.
Section 38.10, Florida Statutes (1989), provides for the disqualification of a judge “[wjhenever a party to any action or proceeding makes and files an affidavit stating that he fears he will not receive a fair trial in the court where the suit is pending on account of the prejudice of the judge of that court against the applicant or in favor of the adverse party[.]” (Emphasis supplied.)
A motion to disqualify a judge filed pursuant to section 38.10 must fulfill the procedural requirements of Rule 1.432, Florida Rules of Civil Procedure. Brown v. St. George Island, Ltd., 561 So.2d 253, 255 (Fla.1990); Hayslip v. Douglas, 400 So.2d 553 (Fla. 4th DCA 1981). Mrs. Nateman’s motion complies with the rule’s procedural requirements. The verified motion alleges “the facts relied on to show the grounds for disqualification.” Fla.R.Civ.P. 1.432(b). A motion is sufficient if it alleges facts which are sufficient to “prompt a reasonably prudent person to fear that [s]he could not get a fair and impartial trial.” Hayslip, 400 So.2d at 556. Mrs. Nateman’s motion met the test.
The majority has misperceived the issue. The judge’s tone and demeanor, and reliance on personal experiences, are not determinative of a motion for disqualification. *646 “[T]he principal issue presented in a motion for disqualification is that of legal sufficiency.” Breakstone v. MacKenzie, 561 So.2d 1164, 1167 (Fla. 3d DCA 1989), approved in part and quashed in part, 565 So.2d 1332 (Fla.1990). Legal sufficiency is governed by a reasonable person standard: the sole consideration is whether the litigant requesting disqualification can reasonably fear she will not receive an impartial or fair trial. Breakstone v. MacKenzie, 565 So.2d 1332 (Fla.1990); Fischer v. Knuck, 497 So.2d 240 (Fla.1986); Livingston v. State, 441 So.2d 1083 (Fla.1983); Dickenson v. Parks, 104 Fla. 577, 140 So. 459 (1932); Hayslip. The trial court’s denial of a request for disqualification constituted error in light of the verified and factually substantiated claims of prejudice.
A correct statement of the issue would clarify the need for relief. The sole issue is whether the trial judge properly denied a verified motion for disqualification alleging as grounds for disqualification facts sufficient to “prompt a reasonably prudent person to fear that [s]he could not get a fair and impartial trial.” Hayslip, 400 So.2d at 556. The record demonstrates that the trial judge should have granted the motion; I would grant prohibition.
Mrs. Nateman, the wife in pending dissolution proceedings, cites the trial court’s repeated condescending and adversarial remarks as grounds for disqualifying the trial judge. Throughout her final hearing testimony, the trial court indicated disapproval of Mrs. Nateman’s life-style and spending patterns, and mistrust of her assessment of her children’s needs.[1] The court challenged as excessive and inappropriate not only the amounts of money Mrs. Nateman spent for food,[2] baby-sitters, and *647 the children’s recreation, but also her cooking habits and style of living,[3] finding her expenditures and habits exorbitant, without regard to the parties’ habits.
Prior to the conclusion of the final hearing, Mrs. Nateman filed a verified motion to disqualify the judge, alleging that she was convinced she would not receive a fair trial. To support her allegations, Mrs. Nateman cited the judge’s interjections of his “own personal life-style, standards, values and beliefs and prejudgments in condemnation of the life-style which [Mrs. Nateman] testified that her children, her husband and she have always enjoyed and which she wants to continue for her children and herself.” As an additional supporting fact, Mrs. Nateman alleged that the court’s tone and demeanor were antagonistic and even hostile and attached a partial transcript of the proceedings. The trial court denied her motion.
The transcript of the hearing demonstrates the trial judge’s abandonment of neutrality and discloses his combative adversarial position. The judge’s
mien and the reflex from his court room speak louder than he can declaim on this point. If he fails through these avenues to reflect justice and square dealing, his usefulness is destroyed. The attitude of the judge and the atmosphere of the court room should indeed be such that no matter what charge is lodged against a litigant or what cause he is called on to litigate, he can approach the bar with every assurance that he is in a forum where the judicial ermine is everything that it typifies, purity and justice. The guaranty of a fair and impartial trial can mean nothing less than this.
State ex rel. Davis v. Parks, 141 Fla. 516, 520, 194 So. 613, 615 (1939). “If the attested facts supporting the suggestion are reasonably sufficient to create such a fear, it is not for the trial judge to say that it is not there.” Livingston, 441 So.2d at 1087. Mrs. Nateman’s verified motion set forth sufficient facts to support her reasonable fear of the trial judge’s partiality. The judge, although not required to believe a litigant, may not demonstrate a bias against her. St. George Island, Ltd.
In fact, the trial court utilized its own predetermined standards for spending and economizing. Because the judge must determine the support needs of the wife and children, his refusal to listen with an open mind to testimony about those needs forecloses the litigant’s right to be heard. Contrary to the implication in the judge’s comment to Mrs. Nateman,[4] her ability to economize is not the determinative issue; rather, it is the standard of living enjoyed by the family during the duration of the marriage that governs the awards. See Canakaris, 382 So.2d at 1201 (“Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties.”) (emphasis supplied). Although a judge’s experiences *648 may affect the weighing of facts and assessment of the credibility of witness, the court may not impose its own standard of living on the parties.
*647 Q: Isn’t it a fair statement that you have not tried to economize? Isn’t that a fair statement?
*648 The majority confuses appropriate discussion with counsel and inappropriate argument with a litigant,[5] citing cases that are clearly distinguishable from the issue presented in this appeal. In Mobil v. Trask, 463 So.2d 389, 391 (Fla. 1st DCA), review denied, 476 So.2d 674 (Fla.1985), cited by the majority, the remark was “that variety of statement or question not infrequently posed to counsel in order to stimulate a response which would better enable the judge or deputy to adjudicate the com-pensability of the claim.” The comment prompting a request for disqualification in Deauville Realty Co. v. Tobin, 120 So.2d 198, 201 (Fla. 3d DCA 1960), cert. denied, 127 So.2d 678 (Fla.1961), was made by the trial judge at “the close of the trial, out of the presence of the jury.” Here, the remarks were made by the finder of fact. It is noteworthy that the Deauville court indicated that “[a] statement by a trial judge that he feels a party has lied in the case is generally regarded as indicating a bias against such party.” Deauville, 120 So.2d at 202; St. George Island, Ltd. The trial judge’s indication that he felt Mrs. Nate-man’s reported expenses and customs were at best unnecessary, and at worst fabricated, discloses his bias. Under the Deauville standard, the disqualification should have been granted.
Section 38.10 requires the court to accept as true the facts and reasons for the belief of prejudice set forth in the party’s motion. St. George Island, Ltd., 561 So.2d at 255. Mrs. Nateman’s verified motion for disqualification contains “an actual factual foundation for the alleged fear of prejudice.” Fischer, 497 So.2d at 242. “Prejudice of a judge is a delicate question to raise but when raised as a bar to the trial of a cause, if predicated on grounds with a modicum of reason, the judge against whom raised should be prompt to recuse himself.” Livingston, 441 So.2d at 1085 (emphasis supplied) (citations omitted).
The majority holding that appellate review offers an adequate remedy thwarts the very purpose of disqualification proceedings and is contrary to established case law. Fischer; Lawson v. Longo, 547 So.2d 1279 (Fla. 3d DCA 1989). Those cases emphasize the importance of prompt action: a litigant may not wait for an adverse ruling. By waiting for a judgment to be rendered in the cause, the litigant who fears prejudice or bias on the part of the trial judge waives her right to seek disqualification of the judge. Thus, immediate, not appellate action, is required. The majority should not defend the “circuit court” when a litigant seeks to obtain her rights.
Mrs. Nateman stepped into the ring against an opponent; she was felled by the referee! When the judge declared that her children should no longer be afraid to stay without a sitter or that they do not need adequate clothing because the judge’s grandchildren manage with fewer outfits, he demonstrated his unwillingness to listen to her sworn testimony. However paternal the court intended to be, its own declarations established bias and hostility against Mrs. Nateman. To treat an adult parent like a foolish child can be described as nothing less than meriting the disqualification provided by law.
In summary, the question on a motion for disqualification is limited to the legal sufficiency of the motion. The motion to disqualify must be made during the course of the proceeding, not after an adverse ruling. A judge may assess credibility but may not reject the parties’ self-determined life-style. A judge should apply supreme court standards, not the judge’s personal standards. A fair trial before an impartial judge does.not “wreak havoc.”
For these reasons, I would grant the petition for writ of prohibition.

. The trial judge repeatedly opposed Mrs. Nate-man’s testimony. On one of several such occasions he stated:
THE COURT: What is the $50 for?
THE WITNESS: Babysitting. Someone coming over and watching the kids when I went to aerobics or when I went, you know, shopping, and they did not want to go.
THE COURT: So they come in — a 14-year-old kid cannot sit with his sisters?
THE WITNESS: No. He is thirteen. He turns thirteen this month.
THE COURT: He cannot sit with his brother and sister?
THE WITNESS: They are scared to stay home alone because of the break-in.
THE COURT: Ma'am, the break-in happened two years ago.
THE WITNESS: Well—
THE COURT: What do you say, "I cannot leave you alone because somebody broke in the house”?
THE WITNESS: All I am saying—
THE COURT: I had a break-in in my house and they tore the back door off, and I also had two children at home at that time, and in thirty days they had forgotten all about it.
Two years later, this should not have been a problem. (Emphasis supplied).
The trial judge expressed similar disdain at another point in the proceedings:
THE COURT: Are you telling me you spent $3,600 for children’s clothing?
THE WITNESS: No, David did. He bought Kevin a pair of sneakers that cost him $125.
THE COURT: $3,600 for three kids, eight, nine and twelve or thirteen? I have three grandchildren. We do not spend $3,600 on those kids. (Emphasis supplied).
THE WITNESS: I have not been buying the children's clothes, their father has.

. On one occasion, the following exchange took place:
Q. How much child support do you believe that you need, and why?
[[Image here]]
A. Child support, approximately $4,400 a month for all three.
[[Image here]]
THE COURT: $4,400 for each child comes out to $1,500.
[[Image here]]
THE COURT: It comes out to $350 per week per child. Why do you need $350 per week per child?
THE WITNESS: Food for in and out of the home is about $800.
THE COURT: Are you telling me that your children eat $800 worth of food a week?
THE WITNESS: A month.
THE COURT: $350 a week, and you are telling me that these children need $350 for food a week?
THE WITNESS: Two hundred in, and approximately about one hundred and fifty outside of the home.
[[Image here]]
THE COURT: They take out a box of dry cereal and they eat it, right? I have grandkids and you are telling me it costs $350 a week?
THE WITNESS: Between groceries and the things that I get at the produce market and the food outside the home, yes, sir.
THE COURT: Ma'am, you could not spend, if you went out and bought Porterhouse steak—

. The trial judge challenged Mrs. Nateman regarding her lifestyle:
Q. Just tell the Judge what David has not gotten that you think the children need now. They are going to school barefoot, right?
A. Well, he got Kevin two pairs of pants for the whole school year. You tell me if Kevin can wear two pairs of pants for the rest of the school year.
THE COURT: Why not?
THE WITNESS: Because he wears them once and they come home and they are dirty.
THE COURT: So put them in the washer.
THE WITNESS: Every other night I have to do a load of laundry?
THE COURT: Wait a minute. You are telling me that you do not do laundry every night? Your kids do not use towels? Don’t your kids take baths?
THE WITNESS: Sure.
THE COURT: Don't you do laundry for their bath towels and everything in the washing machine at night?
THE WITNESS: I don’t have just one towel. I put them in the laundry basket, and I do different loads. I do whites one night, and the colors the other night.
THE COURT: So every other night you are saying — you have two pairs of pants, that is all he has to his name?
THE WITNESS: That is all that fits him. The school has a dress code. That is all that he can wear to school.

. At one point during the proceedings, Mrs. Nateman was asked:

. The trial court’s adversarial exchange with a witness who is testifying is distinguishable from a court's permissible discussion of the law with counsel.