642 So.2d 1108 (1994)
Brian Douglas MITCHELL, Appellant,
v.
STATE of Florida, Appellee.
No. 93-2984.
District Court of Appeal of Florida, Fourth District.
September 9, 1994.
Clarification Denied October 19, 1994.
*1109 Patrick C. Rastatter of Glass & Rastatter, P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Michelle A. Konig, Asst. Atty. Gen., West Palm Beach, for appellee.
FARMER, Judge.
We reverse an order finding a violation of community control and consequent sentence because the trial judge erred in denying defendant's motion to disqualify him.
Defendant had previously been sentenced to 2 years of community control followed by 3 years probation, after waiving his right to be treated as a juvenile and pleading guilty to armed robbery and leaving the scene of an accident. A condition of his sentence was that he spend 6 weeks in the custody of the Sheriff during the summer of 1993 and another 6 weeks during the summer of 1994. His community control sentence caused him to lose a scholarship to attend college out of state, because such punishment cannot be transferred out of Florida. As a consequence he applied and was admitted to Broward Community College. After his release from his first 6 weeks with the Sheriff in July 1993, he began to seek employment that would not interfere with college. By the time of his arrest for the alleged violations of community control, he had apparently received an offer of a position at Sears.
His community control officer [CCO] decided in early August to seek a revocation based on 5 alleged violations of community control: 2 counts of not being home when he should have been; 1 count of failing to answer questions posed by another officer; and 2 counts of failing to complete employment search forms correctly. As to all of them, defense counsel vigorously asserted either a complete lack of intent to violate or some mitigating circumstance.[1] Counsel worked out an agreement, however, whereby defendant would plead no contest and the CCO *1110 would recommend continuation of the community control but with the added feature of electronic monitoring.
According to affidavits filed later, however, the CCO told defense counsel that on August 3rd she met alone with Judge Goldstein about revoking defendant's community control and that Judge Goldstein had instructed her to file the necessary papers to "issue a warrant and to have [defendant] picked up and to let him sit in jail for several weeks so that he could `think about it.'" When defense counsel arrived for the September 1st hearing, she saw the CCO conferring in chambers with Judge Goldstein.
When the matter was called several minutes later defense counsel responded, saying that she thought the CCO was in the judge's chambers. Defense counsel then explained that she had worked out an arrangement with the CCO to allow the defendant to surrender on August 31st (the previous day) and to have the disposition hearing on September 1st at which the CCO would recommend electronic monitoring, all so that defendant would not be forced to miss any classes at college. To this the court said: "[s]he [CCO] told me what her recommendation was and that was electronic monitoring."
Counsel then urged the court to allow the disposition hearing to take place, as it had already been arranged between the CCO and defense counsel, and as it had already been scheduled through the trial judge's judicial assistant. The judge steadfastly refused to do so, saying that he had a policy requiring alleged violators of community control to be arrested and then sit in jail for a "first hearing." The judge also insisted that this defendant be treated "no differently than any other case" and that meant he would be ultimately sentenced to at least 90 days in jail for the alleged violations.
Defense counsel argued:
"COUNSEL: [Your judicial assistant] set [a final hearing] for today after I explained the entire circumstance to her. [The CCO] was very aware of the fact that the case was going to be set for this morning. She's the one who went along with it, understanding that he had been in jail and understanding that since the warrant was actually signed by you and has been in total compliance. She has no problem with him. He just took a drug test for a job. To have him at this time in the county jail for a couple of weeks as punishment for whatever violation he may have I think is inappropriate."
"COURT: This is not punishment. This is the way the system works in every case."
After additional colloquy between the judge and counsel, the following ensued:
"COURT: We're taking him into custody and if you want to set this for first hearing or final hearing, that's what's going to happen. If he wants to plead 
"COUNSEL: And you'll sentence him to 90 days in jail?
"COURT: I don't know what I'm going to do. We can have a sentencing hearing. I'll speak with [the CCO]. I'll speak with her.
"COUNSEL: She's indicated to me you already had spoken to her.
"COURT: I did.
"COUNSEL: That you told him to surrender and that he should sit for several weeks, and you want to make an impression on him and make him sit for several weeks.
"COURT: I don't recall saying that. But, I do know I want him to surrender just like in any other case. * * *"
Counsel then sought to find out when the court would allow a hearing to be scheduled, and the court replied that the CCO officer would be out of town for at least one week. Counsel pointed out that the she had seen the CCO before the hearing in the judge's chambers, asserting that "she's here today." To this the judge responded:
"COURT: She's not here now.
"COUNSEL: She was here this morning, Judge. You already talked to her this morning.
"COURT: I sure did.
"COUNSEL: And did you ask her to leave, tell her that she could leave?
"COURT: I told her that.

*1111 "COUNSEL: Why?
"COURT: Because we're not doing anything this morning."
After more colloquy, counsel asked whether the court would set a bond on the warrant, to which the court responded "[n]o, I will not." When the court finally stated that the hearing would be set for September 13th, counsel stated:
"COUNSEL: September 13th. I [would] just like the record to reflect the [CCO] was present this morning in your office having discussions with you about this case and that you instructed her to leave.
"COURT: That's correct."
Before the scheduled September 13th hearing, defendant filed a motion to disqualify Judge Goldstein. The motion made extensive reference to the above exchanges at the September 1st hearing, the transcript for which was filed on September 13th. The motion was supported by affidavits from defense counsel and her secretary attesting to conversations with the CCO in which the CCO stated that she had ex parte private conferences with the trial judge about revoking defendant's community control. Though the motion was submitted in the name of the defendant, it was not signed by defendant himself.
At the September 13th hearing, Judge Goldstein announced that the motion to disqualify was legally insufficient but refused to identify the specific deficiency. The case proceeded to a disposition with defendant pleading nolo contendere and expressly reserving the right to challenge the judge's denial of disqualification on appeal.
The state's strongest challenge to all this is that the motion was technically improper because it was not actually subscribed under oath by the defendant himself, but instead only by his attorney on his behalf. In addition, the state asserts that the motion does not specifically state anywhere within its four corners that defendant fears that he cannot receive a fair trial from the assigned judge, and further that the legal issue sought to be reviewed after the nolo contendere plea in this case is not a dispositive issue.[2]
Defendant responds that defense counsel filed the motion to disqualify under rule 3.230, without noticing that that rule had been repealed effective January 1, 1993, and been replaced by new rule 2.160. See Fla. R.Jud.Adm. 2.160; and The Florida Bar Re: Amendment to Florida Rules of Judicial Administration, 609 So.2d 465 (Fla. 1992). Former rule 3.230 did not require that the defendant personally sign the motion, but it did require that it be supported by two affidavits and that defendant's lawyer certify that it was filed in good faith. The motion in this case complies with both of these former requirements.
It is unfortunate that the judge did not specifically state that he had denied the motion because of this particular deficiency. The defendant was present in open court, and he could have been sworn on the record and directed to sign the motion. It is true that rule 2.160(f) states that "[n]o other reason for denial shall be stated, and an order of denial shall not take issue with the motion" and that the decisions on disqualification have shown the danger in the trial judge commenting on the grounds stated in the motion. See, e.g., MacKenzie v. Super Kids Bargain Store Inc., 565 So.2d 1332, 1339 (Fla. 1990) (disqualification required where judge went beyond determination of legal sufficiency and passed upon truth of facts alleged in support of motion); and Bundy v. Rudd, 366 So.2d 440, 442 (Fla. 1978) (judge's attempt to refute charges of partiality alone suffices to disqualify). Using these principles to avoid identifying technical deficiencies in a motion to disqualify, however, is to ignore the common sense rule  that judges should not take issue with the facts alleged in the motion  in favor of *1112 a silly formulaic and mechanical precept that judges should make no comment on the motion other than to say "denied" or "granted".[3]
In any event, applicable precedent from the supreme court suggests that the trial court should have forgiven this particular deficiency. In Livingston v. State, 441 So.2d 1083 (Fla. 1983), involving an unsuccessful attempt to disqualify a trial judge for bias and prejudice against defendant's trial counsel, the state argued that the conceded failure of the motion to comply strictly with rule 3.230 authorized the denial of the motion. In rejecting that argument, the supreme court said:
"We reject the state's contention that appellant's motion is invalid because it was filed pursuant to section 38.10 rather than under Florida Rule of Criminal Procedure 3.230. The substance of the procedural requirements of rule 3.230 is contained in the appellant's motion. In considering the sufficiency of the allegations to meet the requirements of our procedural process, the technical requirements of the contents of the affidavits need not be strictly applied but, rather, they will be deemed sufficient `[i]f taken as a whole, the suggestion and supporting affidavits are sufficient to warrant fear on the part of' a party that he will not receive a fair trial by the assigned judge.

"The facts alleged in the motion need only show that `the party making it has a well grounded fear that he will not receive a fair trial at the hands of the judge.' `If the attested facts supporting the suggestion are reasonably sufficient to create such a fear, it is not for the trial judge to say that it is not there.' Further, `it is a question of what feeling resides in the affiant's mind and the basis for such feeling.'" [c.o., e.s.]
441 So.2d at 1087. We apply these principles to this case.
This is not a case where defendant's testimony was necessary to establish a critical fact supporting disqualification, which could not be done by anyone else. Indeed the facts to which he would have sworn were those involving the occurrences at the September 1st colloquy between the trial judge and his counsel. Nor can there be any denying that the contents of the two affidavits and the transcript of the September 1st hearing construct a powerful basis for the defendant to fear that he will not receive a fair hearing from Judge Goldstein. No affidavit from the defendant himself would have added or detracted from that basis. Hence, we do not deem the omission of defendant's signature to eliminate a needed evidentiary basis for the facts essential to the motion to disqualify.
In reaching this conclusion, we do not easily forgive the requirement that the party subscribe the motion under oath. We certainly do not mean to imply that we will routinely overlook such a failing. We stress that the new rule's requirement is not simply a procedural technicality that counsel can confidently avoid. We merely hold under the unique circumstances of this case, where the primary facts supporting disqualification are spread over a hearing transcript, that for this occasion this omission does not require that we affirm the trial judge's denial.
Frankly we are more than a little distressed over the trial judge's handling of this case. The ex parte communications in this case are alone sufficient to require that Judge Goldstein disqualify himself, if only to remove the appearance of partiality. Moreover we cannot refrain from noting that this particular judge apparently does not shrink from announcing fixed ideas on what he will do in a given case before he hears the evidence and argument of the parties in open court. See Gonzalez v. Goldstein, 633 So.2d 1183 (Fla. 4th DCA 1994) (same judge disqualified for announcing before hearing what the eventual sentence will be at forthcoming resentencing). In either or both respects, a defendant could understandably fear that he will not receive a fair hearing. See Fischer v. Knuck, 497 So.2d 240 (Fla. 1986).
We condemn in the strongest terms the practice, if it is a practice, of trial judges meeting with probation or community control *1113 officers on an ex parte basis to discuss incipient violation charges and possible dispositions. The role of a sentencing judge is to impose the sentence, not to supervise the executive branch authorities in their execution of it. The mere fact that the judge chose the sentence imposed cannot possibly justify such improper communications. The day-to-day superintendence of probationers and community controlees is no business of the sentencing judge. If the officer assigned to a particular defendant decides that it is necessary to bring charges of violation, they must be brought and prosecuted in the same way any other judicial proceeding is done  before a neutral and impartial presiding judge who learns everything there is to learn about the charges in open court from the contesting parties and their witnesses.
We are even more distressed that a trial judge would deliberately arrange a docket so that a probationer or community controlee accused of violation is required to sit in jail for several weeks before a hearing on the VOP charges is held. Prehearing detention of those charged with violating probation or community control is not a form of punishment. When it is necessary as a result of the required showing, it is proper only to insure the presence of the accused violator and to protect the public interest. Here, the CCO herself actually agreed that defendant need not be arrested but could surrender himself the night before the scheduled dispositional hearing, thus demonstrating that the responsible state officer did not seek prehearing detention in this case. Nor is such a policy saved by the fact that it is uniformly applied by the judge to all accused violators. To use prehearing or pretrial detention as punishment for the charges is not only contrary to law but is an appalling misuse of judicial powers.
REVERSED AND REMANDED WITH DIRECTIONS THAT CAUSE BE ASSIGNED TO A DIFFERENT JUDGE.
PARIENTE and STEVENSON, JJ., concur.
NOTES
[1] E.g., as to at least one of the not being home charges, he was apparently 20 minutes late in arriving home from a shopping center, where he had been seeking employment, on account of a severe rainstorm. As to the failing to answer questions charge, it took place the day after his release from the Sheriff's custody. He had reported as directed to see his CCO officer, who it turned out was out of the office that day, and the substitute officer accosted him in a hallway without identifying herself.

While these charges might appear to some to border on the trivial, we make no decision to that effect in recognition of the discretion reposed in these CCO's. We think it appropriate for us to suggest, however, that revocation should be used primarily for those cases where the defendant has committed significant violations, rather than (as the trial judge here several times implied) as a device to make an "attitude adjustment."
[2] We dispose of the last two contentions summarily. Although the motion does not incant the words that defendant fears he cannot receive a fair hearing, that is the clear and undeniable import of what the motion does say: e.g. "[t]his court has clearly shown that he is prejudiced against the Defendant and has pre-judged his guilt as to the Violation of Probation." Second, while disqualification of a trial judge is not a disposition of the charge of violating community control, it may very well lead to a different disposition if a partial judge is removed and an impartial one decides the merits.
[3] Here we think that no impropriety would have occurred if the court had merely pointed out that the deficiency lay in the failure of defendant to swear to the motion and subscribe it. As we have observed, he was in court and that oversight could have been immediately corrected. It certainly would have served the interests of justice to have done so.