TAYLOR, J.
Walter Dendy and Neal Bross appeal their convictions for the murder of Leonard Houda. We affirm on all grounds raised by appellants, but write to address one point on appeal. Appellants contend that the trial judge erred in not disqualifying herself because of her prior involvement in this matter as a prosecutor. We disagree and affirm.
In the first trial of this matter, separate juries convicted Dendy of second degree murder and Bross of third degree murder. We reversed both convictions because appellants’ confessions, which were introduced at trial, had been obtained through use of the Broward Sheriffs Office’s defective Miranda rights form. Dendy v. State, 896 So.2d 800 (Fla. 4th DCA 2005), and Bross v. State, 898 So.2d 1027 (Fla. 4th DCA2005).[1]
Retrial of this case was assigned to Circuit Court Judge Eileen O’Connor, a former federal prosecutor. After the jury was selected, but before the first witness testified, appellants orally moved for mistrial. They advised Judge O’Connor that they had just discovered a letter, dated February 9, 2001, from Assistant State Attorney Edward Walsh addressed to then-Deputy Assistant United States Attorney Eileen M. O’Connor. In the letter, Walsh wrote that a state warrant had been *1223 issued for John Doe a/k/a James Cassidy for “Theft of Identity.” He stated that there was reason to believe that Cassidy had left the State of Florida and requested assistance in issuing an Unlawful Flight to Avoid Prosecution (UFAP) warrant.[2] James Cassidy a/k/a Emilio Charafardin became a key witness against appellants. Appellants expressed their concern about the judge’s prosecutorial role in bringing this witness from California back to Florida.
Upon reviewing the letter, Judge O’Con-nor stated that the letter from Ed Walsh was an Extradition Unit Request and that, as the managing assistant, she would not have handled it. The letter was addressed to her only because of her supervisory role in the U.S. Attorney’s Office at that time. She explained that her involvement, if any, would have been limited to the administrative task of assigning the routine request to an assistant U.S. Attorney; she would not have seen the letter nor assisted in obtaining the UFAP warrant. Judge O’Connor allowed appellants time to confer with counsel concerning their motion for mistrial. After a brief recess, appellants renewed their motion for mistrial and moved for recusal as well. Judge O’Con-nor gave appellants time to prepare and file a written motion to disqualify.
Appellants’ motions to disqualify alleged that James Cassidy a/k/a Emilio Charafar-din was the key witness against appellants, and that, after the letter was sent to now Judge O’Connor, a warrant issued for Cha-rafardin’s arrest in Palm Springs, California. Broward Sheriffs Office, detectives traveled to Palm Springs, California and, in the course of executing the warrant for identity theft, obtained a confession from Charafardin regarding the Houda murder. The confession implicated appellants, Den-dy and Bross. Appellants alleged that they had reason to fear that they would not receive a fair trial before Judge O’Con-nor in light of her prosecutorial involvement in the case. Judge O’Connor denied their motions as legally insufficient.[3]
At trial, the prior trial testimony of Emilio Charafardin a/k/a James Cassidy was read to the jury. According to Charafar-din’s testimony, Walter Dendy hired Cha-rafardin to pour sulfuric acid on Leonard Houda. Charafardin then found Neal Bross to help him with the acid attack. Charafardin testified that Bross carried out the attack, with Charafardin acting as the getaway driver. Houda later died after suffering severe acid burns to his body, multiple organ failure, and sepsis due to chemical burns. In the weeks following the deadly attack, as the police closed in, Charafardin went to Palm Springs, California, where he was arrested on the UFAP warrant. He subsequently confessed to the Houda murder and implicated both Dendy and Bross.
Appellant Dendy was found guilty of Second Degree Murder and sentenced to life imprisonment. Appellant Bross was found guilty of Third Degree Murder and sentenced to fifteen years imprisonment.
Whether a motion to disqualify is legally sufficient is a question of law. Therefore, the, proper standard of review is de novo. Chamberlain v. State, 881 So.2d 1087, 1097 (Fla.2004), cert. denied, 544 U.S. 980, 125 S.Ct. 1669, 161 L.Ed.2d 495 (2005). Florida Rule of Judicial Administration 2.160 governs the disqualifica *1224 tion of trial judges. It sets forth the grounds for such a motion:
(d) Grounds. A motion to disqualify shall show:
(1) that the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge; or
(2) that the judge before whom the case is pending, or some person related to said judge by consanguinity or affinity within the third degree, is a party thereto or is interested in the result thereof, or that said judge is related to an attorney or counselor of record in the cause by consanguinity or affinity within the third degree, or that said judge is a material witness for or against one of the parties to the cause.
When faced with a motion to disqualify, a trial judge must determine whether the alleged facts would create in a reasonably prudent person a well-founded fear of not receiving a fair and impartial trial. See Zuchel v. State, 824 So.2d 1044, 1046 (Fla. 4th DCA 2002). A judge confronted with a motion to disqualify “may only determine whether the motion is legally sufficient and is not allowed to pass on the truth of the allegations.” Livingston v. State, 441 So.2d 1083, 1086 (Fla.1983).[4]
Appellants argue that their allegations regarding Judge O’Connor’s apparent role in procuring the UFAP warrant for Charafardin were sufficient to create in a reasonably prudent person a well-founded fear of not receiving a fair and impartial trial. They assert that their motions and “the records” showed that Judge O’Connor “had some function in a prosecutorial capacity in this case prior to indictment, assisting law enforcement in obtaining an interstate arrest warrant.” However, neither the allegations in their motions nor any attachments to the motions sufficiently established this. Although appellants did allege that a federal warrant issued for Charafardin and that Broward detectives obtained a confession from him implicating appellants, appellants did not allege that Judge O’Connor actually participated in procuring the arrest warrant. At best, the motions to disqualify suggest that Judge O’Connor may have participated in obtaining the warrant because the UFAP request letter was addressed to her. Further, even if appellants had alleged some actual participation by the judge, appellants did not allege a sufficient connection between the judge’s role in the Charafar-din warrant and the prosecution of appellants in this case for the motion to have been legally sufficient. The warrant that was sought and issued for Charafardin was based on his flight from prosecution on an unrelated “Theft of Identity” charge. The motions did not allege that Judge O’Con-nor was made aware of any connection between Charafardin and the murder charges against appellants or that she sought the warrant to secure him as a witness against appellants in this murder ease. We believe that Canon 3E(1) of the Code of Judicial Conduct is instructive on this point.
Subsection (1) of Canon 3E requires that “a judge disqualify himself or herself in a proceeding in which the judge’s impartiality might reasonably be questioned, including but not limited to instances where ... (b) the judge served as a lawyer ... in the matter in controversy....” Here, there is no allegation that Judge O’Connor ever served as a lawyer in this murder prosecution. The fact that Charafardin, upon his arrest on the UFAP warrant for identity *1225 theft, ended up confessing and implicating appellants in this murder case does not qualify Judge O’Connor as having previously served as a lawyer in this case. Cf. Penoyer v. State, 945 So.2d 586 (Fla. 2d DCA 2006) (holding that a defendant’s allegation that the trial judge also served as prosecutor for the underlying conviction entitled him to have his postconviction motions heard by another judge); Ryals v. State, 914 So.2d 285 (Miss.App.2005) (holding that judge was required to recuse himself from hearing post-conviction relief motion because he served a prosecutorial role in the same underlying criminal case).
Here, appellants’ motions failed to set forth legally sufficient reasons for disqualification. The motions were based on speculation and were too vague in alleging that the judge had “some prosecutorial involvement in the case.” We hold that the facts alleged would not create in a reasonably prudent person a well-founded fear of not receiving a fair and impartial trial. In so holding, we distinguish this case from those wherein the judge is alleged to have been actually involved in the prosecution of the defendants moving for disqualification. See Duest v. Goldstein, 654 So.2d 1004 (Fla. 4th DCA 1995) (holding that the trial judge’s assistance in prosecuting defendant at his first trial, while the judge was an assistant and supervising state attorney of the division in which defendant was tried, created a reasonable basis for concern); Roberts v. State, 161 So.2d 877 (Fla. 2d DCA 1964) (holding that a judge was disqualified to preside over the defendant’s case where the judge had earlier appeared in the prosecution as county solicitor and had interviewed the witnesses against the defendant and filed the informations against him).

Affirmed.

GROSS, J., concurs.
WARNER, J., dissents with opinion.

. The opinion in Dendy’s appeal also held that a comment by the prosecutor in closing argument was improper. See Dendy, 896 So.2d at 804.

. 18 U.S.C.A. § 1073 makes it a federal offense to flee and move in interstate commerce with intent to avoid prosecution under state law.

. Appellants filed an emergency petition for writ of prohibition in our court, which we denied in Case No. 4D05-2891.

. Appellants have not argued on appeal that Judge O'Connor took on an adversarial role requiring disqualification when commenting on her lack of involvement in the UFAP warrant during the hearing on their motion for mistrial.